NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 09a0744n.06

No. 09-3138

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**

**Nov 18, 2009**

LEONARD GREEN, Clerk

BLANCA ESTELA MORAN-QUINTEROS,        )
                                      )        ON PETITION FOR REVIEW
      *Petitioner*,                   )        OF A DECISION OF THE
                                      )        BOARD OF IMMIGRATION
v.                                    )        APPEALS
                                      )
ERIC H. HOLDER, JR., Attorney General )        **O P I N I O N**
                                      )
      *Respondent*.                   )


BEFORE:    DAUGHTREY, COLE, and GIBBONS, Circuit Judges.

**COLE, Circuit Judge**.  Blanca Estela Moran-Quinteros, a fifty-year-old native and citizen of Guatemala, petitions for review of a decision by the Board of Immigration Appeals affirming an immigration judge's denial of her application for asylum and request for withholding of removal. Moran sought asylum based on threats that her family received from guerillas in Guatemala in the early 1990s.  The Immigration Judge determined that, while credible, Moran did not establish past persecution or a well-founded fear of future persecution.  For the following reasons, we **AFFIRM** the Board of Immigration Appeal's decision and **DENY** Moran's petition for review.

### I.  BACKGROUND

A.    **Factual Background**

From 1960 until 1996, Guatemala experienced internal armed conflict, and guerillas

terrorized many Guatemalans. Moran's[1] family was no exception. Guerillas demanded provisions, including food and water, from her family and threatened her father. On one occasion, the guerillas told Moran's father "that if he didn't leave his home, they were going to kill him." (Petitioner's Appendix ("Pet. App.") 25.) Due to these threats, Moran's father and her six siblings moved to another village in Guatemala.

Instead of accompanying her family to another part of Guatemala, Moran fled to the United States and entered this country without inspection in 1990. On October 14, 1993, Moran filed an asylum application with the former Immigration and Naturalization Service ("INS"). While her application was pending, she was paroled into the United States under 8 U.S.C. § 1182(d)(5)(A), which permits aliens to be granted temporary stay. Moran was most recently paroled on September 14, 2003, but after her application was referred to an Immigration Judge ("IJ"), her parole status was terminated. On April 10, 2007, the Department of Homeland Security ("DHS") served Moran with a notice to appear, charging her as an alien failing to possess a valid entry document and thus as inadmissible to the United States under 8 U.S.C. § 1182(a)(7)(A)(i)(1). Moran appeared with counsel before the IJ on May 10, 2007, admitted the truth of all the factual allegations contained in the notice to appear, and conceded removability as charged. Moran sought relief from removal based on several theories: (1) asylum and the Convention Against Torture ("CAT"); (2) withholding of removal; (3) cancellation of removal; (4) cancellation of removal for certain non-permanent residents; and (5) in the alternative, voluntary departure.

---

[1]We will refer to Blanca Estela Moran-Quinteros as "Moran," as did her briefs.

While Moran lived in the United States, her father and siblings remained in Guatemala. Moran testified that after her family moved to the new village, the guerillas "didn't do anything to [her father]." (Pet. App. 25). Moran's father still resides in Guatemala, and, of her six siblings, five live safely in Guatemala. However, in 1997, one of Moran's brothers returned to their former village and was killed. Moran testified that she does not know if the guerillas killed her brother for a statutorily protected reason or if he was killed in connection with a robbery.

Moran is the mother of two sons and three daughters. Two of her daughters, Gladys Gesenis Sanctus Moran and Mary Lou Sanctus, live in the United States. She also claims to have six grandchildren who are United States citizens but offered no evidence to support this assertion.

**B.      Immigration Court Decision**

On March 14, 2008, the IJ denied Moran's applications for cancellation of removal, asylum, withholding of removal, and protection under the CAT. The IJ found Moran ineligible for cancellation of removal because she lacked a qualifying permanent resident or United States citizen spouse, parent, or child. The IJ explained that, although one of Moran's daughters, Gesenia, might be a permanent resident, she is thirty-six years old and thus not a child. The IJ further concluded that a grandchild is not a qualifying resident under the Immigration and Nationality Act.

As to Moran's asylum application, the IJ found Moran credible but concluded that Moran failed to establish that she either suffered past persecution or has a well-founded fear of future persecution. The IJ observed that although Moran "does seem to be somewhat traumatized by having to leave her home and country, nothing actually happened to her, physically, other than the threat to her family." (Pet. App. 11.) Thus, the IJ concluded, she suffered no past persecution.

Because of this conclusion, the IJ also rejected Moran's plea for humanitarian asylum, which likewise requires a showing of past persecution.

The IJ further rejected Moran's claim that she has a well-founded fear of future persecution. "[A]ny threat to [Moran] at this time would be a threat of criminal gangs and not a threat on account of any of the factors for which refugee status can be granted under Section 101(a)(42) of the Act." (Pet. App. 8.) The IJ came to this conclusion because Moran did not present evidence that she would be targeted because of her race, religion, nationality, membership in a particular social group, or any political opinion. Because Moran failed to establish eligibility for asylum, the IJ found that she necessarily failed to meet the higher burden of proof required for withholding of removal.

Next, the IJ decided that Moran did not state a claim under the CAT because any harm that she suffered was not "done by the [Guatemalan] government or by any perpetrator that the government consents, acquiesces, or turns a willfully blind eye to." (Pet. App. 12.) While Moran's fear of criminals is certainly not unreasonable, explained the IJ, it is not considered persecution under the Act. Finally, the IJ noted that Moran's fear is undermined by the fact that her family still lives in Guatemala, and Moran is unable to show that any threat to her would be countrywide. (Pet. App. 12.) Therefore, the IJ rejected her claims.

## C. Board of Immigration Appeals Decision

Moran timely appealed the IJ's decision to the Board of Immigration Appeals ("BIA"), arguing that the IJ erred in finding that she was not persecuted on account of membership in a particular social group—her family. Although Moran's brief referred to only her claim for withholding of removal, the BIA construed her appeal as including her asylum claim. The BIA also

noted that Moran did not contest the denial of cancellation of removal and protection under the CAT. The BIA found no reversible error in the IJ's decision, agreeing with the IJ that, while credible, Moran's account is insufficient to establish past or future persecution on a protected ground. Further, the BIA recognized that, under Sixth Circuit precedent, kinship ties may serve as the shared characteristic of a particular social group, but the "bare assertion" that guerillas killed Moran's brother in 1997 is inadequate to justify Moran's fears of future persecution.

## II. ANALYSIS

Although Moran sought CAT protection from the immigration court, she has abandoned the claim on appeal. In addition, she has not challenged the IJ's ruling that a grandchild does not satisfy the statutory definition of "child" under the Immigration and Nationality Act. Thus, we consider only her claims for asylum and withholding of removal.

### A. Standard of Review

In a case in which the BIA both sets forth its own reasoning and adopts portions of the IJ's decision, we review both the BIA's decision and the adopted portions of the IJ's decision. *See Zhao v. Holder*, 569 F.3d 238, 246 (6th Cir. 2009). In other words, this Court "'directly reviews the decision of the IJ while considering the additional comment made by the BIA.'" *Id*. (quoting *Mapouya v. Gonzales*, 487 F.3d 396, 405 (6th Cir. 2007)). This Court reviews the BIA's legal conclusions de novo, although it must defer to the BIA's reasonable interpretations of the Immigration and Nationality Act. *Id*. at 247 (citing *Koulibaly v. Mukasey*, 541 F.3d 613, 619 (6th Cir. 2008)). We review factual findings under a substantial-evidence standard, upholding such findings as long as they are supported by "reasonable, substantial, and probative evidence on the

record considered as a whole." *Id*. (quotation omitted). "Under this deferential standard, the court may not reverse the Board's determination simply because we would have decided the matter differently." *Koulibaly*, 541 F.3d at 619 (quotation omitted). Administrative findings of fact are "conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B).

**B.      Asylum Claim**

The Attorney General has the discretion to grant asylum to a "refugee," which is defined as a person "who is unable or unwilling to return to" her country "because of persecution or a well-founded fear of persecution on account of race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1101(a)(42)(A). An applicant may establish her status as a refugee by showing either that she suffered persecution in her country in the past or that she has a well-founded fear of persecution upon returning to her country. 8 C.F.R. § 1208.13(b). The applicant bears the burden of qualifying as a refugee. *Sako v. Gonzales*, 434 F.3d 857, 862 (6th Cir. 2006). "Persecution entails punishment or the infliction of suffering or harm, but harassment or discrimination without more does not rise to the level of persecution." *Id*. (quotations omitted). "[A]n applicant cannot rely on speculative conclusions or mere assertions of fear of possible persecution, but instead must offer reasonably specific information showing a real threat of individual persecution." *Mapouya*, 487 F.3d at 412 (internal quotation marks omitted). An alien's fear of future persecution must be both subjectively genuine and objectively reasonable, and a showing of past persecution creates a rebuttable presumption that the alien has a well-founded fear of future persecution. *Id*.; 8 C.F.R.§ 1208.13(b)(1)(i).

Moran claims that she is entitled to asylum because she suffered past persecution and she has a well-founded fear of future persecution.

### 1. Past Persecution

Three reasons support the BIA's conclusion that Moran did not suffer past persecution. First, Moran identified only one threat against her family and recounted no incidents of physical harm. The Immigration and Nationality Act does not define persecution, but in *Mikhailevitch v. INS*, this Court held that persecution "requires more than a few isolated incidents of verbal harassment or intimidation, unaccompanied by any physical punishment, infliction of harm, or significant deprivation of liberty." 146 F.3d 384, 390 (6th Cir. 1998); *see also Sako*, 434 F.3d at 862. Thus, even if guerillas verbally threatened to kill Moran's father and demanded food and water, these threats arguably do not rise to the level of persecution because, in general, unfulfilled threats—without physical harm—do not constitute persecution. *See Canales-Vargas v. Gonzales*, 441 F.3d 739, 744 (9th Cir. 2006).

Second, Moran admits that *she* suffered no harm in Guatemala. In *Gilaj v. Gonzales*, this Court explained that to demonstrate past persecution, "the applicant must establish that he or she was specifically targeted by the government for abuse based on a statutorily protected ground and was not merely a victim of indiscriminate mistreatment." 408 F.3d 275, 285 (6th Cir. 2005) (per curiam). Here, Moran has offered no evidence that she personally experienced harm that qualifies as past persecution. She testified that she was afraid to return to Guatemala because of "what [she] went through," but when the IJ asked her to clarify, she could not identify specific harm that she suffered. (Pet. App. 30-31.) In addition, it is not clear from the record that her family was targeted for any

statutorily protected reason. Without more, Moran has not shown past persecution.

Third, Moran's family, including her father, moved to another village in Guatemala and has lived there safely since 1990. In *Pilica v. Ashcroft*, this Court held that "isolated occurrences" of mistreatment, which included two arrests and a beating by policemen, did not constitute past persecution. 388 F.3d 941, 954 (6th Cir. 2004). Because Moran's family has lived safely in Guatemala for nearly two decades, the incidents with guerillas in 1990 were arguably "isolated occurrences" and, therefore, do not establish past persecution sufficient to reverse the BIA's decision.

### 2. *Future Persecution*

An applicant can establish that she has a well-founded fear of future persecution by showing that her fear is genuine, and that a reasonable person in her circumstances would fear persecution on account of a statutorily protected ground if returned to her country of origin. *See Mikhailevitch*, 146 F.3d at 389. Moran's claim that she has a well-founded fear of future persecution overlaps with her claim of past persecution. But again, the record is insufficient to support her claim.

Moran relies on the threats against her father to establish her fear of future prosecution. In *Akhtar v. Gonzales*, this Court stated: "Although acts of violence against an alien's family members may demonstrate a well-founded fear of persecution, absent a pattern of persecution tied to the asylum applicant himself or herself, acts of violence against family members do not necessarily demonstrate a well-founded fear of persecution." 406 F.3d 399, 405 (6th Cir. 2005) (citing *Gebremaria v. Ashcroft*, 378 F.3d 734, 739 (8th Cir. 2004)). As explained above, the evidence that Moran offered falls short of demonstrating a *pattern* of persecution.

Moran also relies on her brother's murder as a basis for asylum. She admitted, however, that she does not know whether guerillas killed her brother or whether he was murdered in connection with a robbery. Thus, she offered no conclusive evidence that her brother was specifically targeted by guerillas as opposed to being a victim of a random act of violence in a violent country. And, while her fear of general crime may be genuine and reasonable, it is insufficient to warrant asylum. *See Akhtar*, 406 F.3d at 405 ("Congress did not intend to confer eligibility for asylum on all persons who suffer harm from civil disturbances . . . .") (internal quotation marks omitted).

Finally, Moran's fear of future persecution is undermined because she has not demonstrated that the cause of her fear is countrywide. *See* 8 C.F.R. § 1208.13(b)(2)(ii) ("An applicant does not have a well-founded fear of persecution if the applicant could avoid persecution by relocating to another part of the applicant's country . . . ."). In *Pascual v. Mukasey*, this Court concluded that where the record indicated that members of the petitioner's family had lived unharmed for nearly sixteen years, it was "reasonable to expect [the petitioner] to do so as well." 514 F.3d 483, 489 (6th Cir. 2007). The Court further observed that where the petitioner evaded the question of whether he could safely return to the area where his family resided, his answer implied that it would be safe to return. *Id*. Here, Moran's family has remained unharmed in Guatemala since the early 1990s. Moreover, like the petitioner in *Pascual*, Moran refused to answer when asked whether she could safely live in the village where her family resides. Thus, we must assume that it would be safe for Moran to return to Guatemala and live in the village where her family resides. *See Pascual*, 514 F.3d at 489.

### 3. Humanitarian Asylum

Moran also argues that she is eligible for humanitarian asylum under *Matter of Chen*, 20 I. & N. Dec. 16 (BIA 1989). As an initial matter, the Government argues that this Court lacks jurisdiction to consider this claim. We agree. The Immigration and Nationality Act provides that "[a] court may review a final order of removal only if . . . the alien has exhausted all administrative remedies available to the alien as of right[.]" 8 U.S.C. § 1252(d)(1). This requirement is jurisdictional and precludes the petitioner from raising new issues in a petition for review. *Liti v. Gonzales*, 411 F.3d 631, 641 (6th Cir. 2005) ("Because the [petitioner] failed to raise this issue before the BIA below, we are without jurisdiction to consider [the] petition for review on [humanitarian] ground[s].") (citing 8 U.S.C. § 1252(d)(1)). Although Moran raised a humanitarian asylum claim before the IJ, she failed to challenge the IJ's determination on appeal to the BIA. Therefore, this Court is without jurisdiction to consider the claim.

Even if Moran's humanitarian claim was properly before this Court, the claim fails on the merits. Under 8 C.F.R. § 1208.13(b)(1)(iii), asylum may be granted where the severity of the petitioner's past persecution demonstrates a compelling reason for the applicant's unwillingness to return to her country. As explained above, Moran has not suffered past persecution. Therefore, she necessarily fails the requirements for humanitarian asylum. *Cf. Mullai v. Ashcroft*, 385 F.3d 635, 638–39 (6th Cir. 2004) (upholding IJ's decision that petitioner "failed to demonstrate past persecution severe enough to merit a grant of asylum on humanitarian grounds" because the Court found no evidence compelling reversal of the IJ's conclusion that petitioner did not suffer past persecution).

**C.      Withholding of Removal**

Finally, Moran seeks review of the IJ's denial of withholding of removal.  To obtain such relief, Moran must show by a "clear probability" that her life or freedom would be threatened on account of her race, religion, nationality, membership in a particular social group, or political opinion.  *Mullai*, 385 F.3d at 639.  "[A] greater quantum of proof is required as to the likelihood of persecution in the country of risk in order to establish eligibility for withholding" than is required to show eligibility for asylum.  *Castellano-Chacon v. INS*, 341 F.3d 533, 545 (6th Cir. 2003). Because Moran fails to meet the standard for asylum, she necessarily fails the standard for withholding of removal.  *See Mullai*, 385 F.3d at 639 ("Because the lesser standard for establishing asylum eludes [petitioner], we conclude that she cannot meet the more stringent requirements for withholding of removal.").

## III.  CONCLUSION

For the foregoing reasons, we **AFFIRM** the BIA's decision and **DENY** the petition for review.