**NOT RECOMMENDED FOR FULL-TEXT PUBLICATION**
File Name: 10a0280n.06

No. 09-3142

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**

**May 11, 2010**

LEONARD GREEN, Clerk

|                                          |     |                              |
| ---------------------------------------- | --- | ---------------------------- |
| EMILJAN PRECAJ,                          | )   |                              |
|                                          | )   |                              |
| Petitioner,                              | )   | ON PETITION FOR REVIEW       |
|                                          | )   | FROM THE BOARD OF            |
|                                          | )   | IMMIGRATION APPEALS          |
| v.                                       | )   |                              |
|                                          | )   |                              |
|                                          | )   |                              |
| ERIC H. HOLDER, Jr.,                     | )   |                              |
| United States Attorney General,          | )   |                              |
|                                          | )   |                              |
| Respondent.                              | )   |                              |

BEFORE:  SILER and ROGERS, Circuit Judges; BELL, District Judge.[*]

**BELL, District Judge.**  Petitioner Emiljan Precaj ("Precaj"), a native and citizen of
Albania, seeks review of a final order of removal of the Board of Immigration Appeals
("BIA").  For the reasons that follow, we **DENY** Precaj's petition for review.

## I.  BACKGROUND

In 1997, when he was fourteen years old, Precaj was admitted to the United States
together with his parents and siblings.  Precaj was granted asylee status, derivative of his

_____

[*]The Honorable Robert Holmes Bell, United States District Judge for the Western District
of Michigan, sitting by designation.

mother's successful claim for asylum. Precaj adjusted to lawful permanent resident status in 1998. On June, 20, 2002, Precaj was convicted of assault with a dangerous weapon in violation of Mich. Comp. Laws § 750.82. (App'x 236, 238.) He was sentenced to forty-five days in jail and two years of probation. (App'x 236.) In September of 2002, the Government charged Precaj with removability pursuant to Section 237(a)(2)(A)(i) of the Immigration and Nationality Act (INA), which provides, in relevant part, that an alien is removable if he or she:

> (I) is convicted of a crime involving moral turpitude committed within five years . . . after the date of admission, and

> (II) is convicted of a crime for which a sentence of a year or more may be imposed.

8 U.S.C. § 1227(a)(2)(A)(i). On September 5, 2003, Precaj appeared before Immigration Judge Terry Christian, who terminated the removal proceedings because the criminal conviction was not final. The criminal appeal was dismissed on October 4, 2003. In 2004, Precaj appeared for a hearing before Immigration Judge Elizabeth Hacker. At the hearing, Precaj admitted the charges in the Notice to Appear. (App'x 53-54.) Judge Hacker indicated to Precaj that, unless his offense was a particularly serious crime, he may have a viable claim for asylum. (App'x 52.) Precaj's counsel informed Judge Hacker that Precaj intended to apply for the following forms of relief from removal: asylum, withholding of removal under the INA, and withholding of removal under the Convention Against Torture ("CAT"). (App'x 54.)

In January of 2005, Precaj filed an I-589 "Application for Asylum and for Withholding of Removal." (App'x 109.) Precaj stated in his application that he feared returning to Albania because:

> I know that I will be prosecuted and mistreated in Albania because of my family history of continuous contradiction with the government and also because I would never agree with the government.
> . . .
>
> I may be sent to jail, beaten up and wrongfully kept in jail, and maybe even killed. We have always been mistreated by the authorities and sent to jail.

(App'x 113, 114.)

On March 6, 2007, Immigration Judge Marsha Nettles held a hearing on the merits of Precaj's application for relief. Precaj testified in support of his application at the hearing.[1] At the conclusion of the hearing, the IJ issued an oral opinion denying Precaj's claims for relief and ordering Precaj's removal. (App'x 4-21.) In her opinion, the IJ examined Precaj's requests for withholding of removal under the INA and the CAT but did not mention or address a claim for asylum. (App'x 5.) The IJ determined that Precaj's "general and meager" testimony was not sufficient to satisfy his burden of proof. (App'x 14.) She noted

---

[1]Precaj testified that his grandfather was tortured and killed by the communist government, an uncle was killed for money, another uncle was captured and beaten, and a brother died from beatings at a daycare facility. (App'x 76, 79-80, 94, 97-98.) He testified that his parents were persecuted and mistreated, but he could not give specific examples. (App'x 82.) He could not recall details of any violence from his time in Albania. (App'x 84.) He did not know if his parents were part of any political party. (App'x 95.) He testified that, though he did not know who killed his uncle, he feared that those who killed his uncle would harm him because they would believe that he would seek revenge for that killing. (App'x 94.) He also testified that he feared returning because "I don't have anywhere where to go or what." (App'x 96.) He further testified that his father and sister had recently visited Albania without problems. (App'x 91, 93.) Finally, he testified that he applied for relief because he did not want to leave his family and daughter, and not because he feared the government of Albania. (App'x 97.)

that there was "no substantive credible evidence to demonstrate any acts of persecution that were perpetrated upon the respondent or his family." (App'x 15.) She determined that "[e]ven if the Court were to accept that there . . . has been past persecution, the Court finds that based on the record evidence, that the Government has successfully rebutted any presumption of a well-founded fear of future persecution in that the . . . country conditions in Albania have significantly changed." (*Id*.) With respect to Precaj's testimony that those who murdered his uncle might seek to harm him, the IJ determined that this claim could not be tied to any protected ground. (App'x 17.) She also noted that "[a]t best, respondent appears to fear general conditions of political strife in Albania," but that this fear was insufficient to sustain a claim for withholding of removal. (App'x 19.)

Precaj appealed the IJ's decision to the BIA, arguing only that he was entitled to asylum. On January 12, 2009, the BIA issued an opinion affirming the findings and decision of the IJ. The BIA's opinion did not address Precaj's eligibility for asylum. Thereafter, Precaj filed his petition for review to this Court raising three arguments: (1) the IJ and BIA (collectively, the "agency") erred by not considering his claim for asylum; (2) the record compels a finding that Precaj suffered past persecution; and (3) the agency failed to apply the regulatory presumption of future persecution and erred in determining that conditions in Albania have changed. The Court heard oral argument from the parties on March 5, 2010.[2]

## II. LAW AND ANALYSIS

---

[2]At oral argument, Precaj asserted that he is entitled to a determination of whether he is eligible for a discretionary grant of humanitarian asylum. *See Matter of Chen*, 20 I & N Dec. 16 (BIA 1989); 8 C.F.R. § 1208.13(b)(1)(iii).

## A. Jurisdiction

The Court has jurisdiction to review a final order of removal pursuant to 8 U.S.C. § 1252(a)(1). Title 8, section 1252(a)(2)(C) of the United States Code partially strips the Court of jurisdiction to review certain orders of removal against criminal aliens. That section provides, in relevant part:

> [N]o court shall have jurisdiction to review any final order of removal against an alien who is removable by reason of having committed a criminal offense covered in section 1182(a)(2) or 1227(a)(2)(A)(iii), (B), (C), or (D) of this title, or any offense covered by section 1227(a)(2)(A)(ii) of this title for which both predicate offenses are, without regard to their date of commission, otherwise covered by section 1227(a)(2)(A)(i) of this title.

8 U.S.C. § 1252(a)(2)(C). Notwithstanding that provision, the Court retains jurisdiction to consider constitutional claims and questions of law. 8 U.S.C. § 1252(a)(2)(D). The agency determined that Precaj is removable for having committed a crime involving moral turpitude in 8 U.S.C. § 1227(a)(2)(A)(i). The jurisdiction-stripping provision does not apply where the alien has been convicted of only one crime involving moral turpitude covered by section 1227(a)(2)(A)(i). *Atoui v. Ashcroft*, 107 F. App'x 591, 593 (6th Cir. 2004). Accordingly, the Court has jurisdiction to review the order of removal.

## B. Standard of Review

"When the BIA adopts the IJ's reasoning and supplements the IJ's opinion, that opinion, as supplemented by the BIA, becomes the basis for review." *Zhao v. Holder*, 569 F.3d 238, 246 (6th Cir. 2009). The Court reviews the factual findings of the agency under the "substantial evidence" standard. *See Ceraj v. Mukasey*, 511 F.3d 583, 588 (6th Cir. 2007). Under this standard, the agency's findings will be upheld if supported by

"'reasonable, substantial, and probative evidence on the record as a whole.'" *Id.* (quoting *INS v. Elias-Zacarias*, 502 U.S. 478, 481, 112 S. Ct. 812, 817 (1992)). The Court will not reverse the factual findings unless "'the evidence not only supports a contrary conclusion, but *compels* it.'" *Id.* (quoting *Marku v. Ashcroft*, 380 F.3d 982, 986 (6th Cir. 2004)) (emphasis in original). Questions of law and constitutional questions are subject to de novo review. *Lin v. Holder*, 565 F.3d 971, 976 (6th Cir. 2009).

## C. Merits

### 1. Failure to consider Precaj's eligibility for asylum.

Precaj argues that the agency erred by failing to consider his eligibility for asylum.[3] For the reasons that follow, Precaj effectively forfeited his asylum claim because he did not present it to the IJ, and he forfeited consideration of this argument by this Court because he did not exhaust it before the agency. Before Precaj filed his written application for relief, the IJ recognized that Precaj may have a viable asylum claim, unless the Government could show that his conviction was for a "particularly serious crime."[4] (App'x 52.) Later, at the same

---

[3]Though Precaj was granted refugee status after his initial arrival to the United States, that status does not confer immunity from removal. *Stolaj v. Holder*, 577 F.3d 651, 657 (6th Cir. 2009); *see Matter of Smriko*, 23 I. & N. Dec. 836, 841 (BIA 2005) (holding that refugees that have adjusted to lawful permanent resident status are subject to all applicable grounds for removal). He was, however, entitled to request relief from removal based on a showing that he continued to meet the definition of refugee. *Smriko*, 23 I. & N. Dec. at 842.

[4]An alien convicted of a particularly serious crime is ineligible for asylum and for withholding of removal under the INA. 8 U.S.C. § 1158(b)(2)(A)(ii) (asylum); 8 U.S.C. § 1231(b)(3)(B)(ii) (withholding of removal). No finding has been made in Precaj's case that he was convicted of a particularly serious crime, and because he was sentenced to less than a year of imprisonment, his offense does not fall under the *per se* particularly serious crime provision rendering aliens that have committed aggravated felonies ineligible for asylum. 8 U.S.C. § 1158(b)(2)(B)(i); *see* 8 U.S.C. § 1101(a)(43)(F) (defining an aggravated felony as a crime of violence with a term of imprisonment of at least one year).

hearing, Precaj's counsel represented to the IJ that Precaj intended to seek withholding of removal under the INA and the CAT, as well as asylum. (App'x 54.) As its title indicates, the I-589 application form submitted by Precaj ("Application for Asylum and Withholding of Removal") allows an applicant to simultaneously apply for both asylum and withholding of removal. *See* 8 C.F.R. § 1208.3(b) ("An asylum application shall be deemed to constitute at the same time an application for withholding of removal . . . ."). The form used by Precaj does not require the applicant to indicate which type of relief is sought.

Precaj's application contains a statement that the Government contends is a disclaimer of a request for asylum. The application asks whether the applicant is filing the application within one year of arrival to the United States.[5] (App'x 116.) Precaj responded that "I originally filed prior to entry and it was granted. I am now filing for withholding because I am in proceedings." (*Id.*) This statement is ambiguous. It might be interpreted to mean that: (a) Precaj met the one-year requirement for filing an asylum application, but he is now applying for withholding of removal *rather than* asylum because he is in removal proceedings; (b) Precaj met the one-year requirement for filing an asylum application, and he is now applying for withholding of removal *in addition to* asylum; or, (c) Precaj met the one-year requirement and he is reasserting his asylum claim as a defense to removal because he is in proceedings. The record does not indicate whether this statement was the basis for

---

[5]Generally, an application for asylum must be filed within a year of the applicant's arrival to the United States. 8 U.S.C. § 1158(a)(2)(B); 8 C.F.R. § 1208.4(a)(2). Failure to file the application within that time period may be excused for "extraordinary circumstances," including maintenance of lawful immigrant or nonimmigrant status prior to filing. 8 C.F.R. § 1208.4(a)(5)(iv).

the agency's decision not to consider Precaj's eligibility for asylum; nevertheless, it is clear from the record that the IJ assumed, at the hearing on the merits of his application, that Precaj was only applying for withholding of removal under the INA and the CAT. At the start of the hearing, the IJ indicated that "[t]oday is the date and time set to go forward on [Precaj's] request for withholding of removal under the Act and withholding under the Torture Convention." (App'x 59.) She did not mention a request for asylum. The IJ asked Precaj's counsel if there was "an alternative request for relief of voluntary departure," and counsel replied that there was. (*Id.*) Counsel did not mention an alternative request for asylum. Later, the IJ described Precaj's form I-589 as a "written application for both forms of withholding." (App'x 65.) In making admissibility determinations on documentary evidence submitted by Precaj, the IJ indicated that she did not understand the relevance of certain evidence because "[w]ithholding under the Act and the Torture Convention are not discretionary forms of relief." (App'x 69.) In contrast, asylum is a discretionary form of relief. 8 U.S.C. § 1158(b)(1)(A). Though counsel could have indicated that Precaj was applying for discretionary relief, counsel instead replied, "Okay." (App'x 69.) The IJ asked Precaj if he had any corrections or changes to make to his application other than his address, and he replied that he did not. (App'x 72-73.) Later, the IJ asked Precaj to "swear or affirm" the contents of his "application for Withholding of Removal and protection under the Torture Convention." (App'x 73.) In referring to the forms of relief sought by Precaj, the IJ never mentioned a request for asylum, and there is no indication that either Precaj or his counsel ever attempted to correct the judge or to clarify that Precaj sought asylum in addition to

withholding of removal.[6]  Thus, in spite of a clear indication that the IJ understood Precaj's

application as a request for withholding of removal under the INA and the CAT, Precaj

effectively forfeited his asylum claim by failing to present it to the agency at the merits

hearing.  C. 8 C.F.R. § 1003.31(c) ("If an application or document is not filed within the time

set by the Immigration Judge, the opportunity to file that application or document shall be

deemed waived."); *Lakhavani v. Mukasey*, 255 F. App'x 819, 822-23 (5th Cir. 2007) (noting

that "[o]ther circuits have held that petitioners can waive CAT or asylum claims by failing

to raise them at the time designated by the IJ under 8 C.F.R. § 1003.31").

At oral argument, Precaj argued to this Court that the agency had an affirmative

obligation to consider his eligibility for asylum based on the evidence in the record, citing

8 C.F.R. § 1240.11(a).  However, those regulations provide that the IJ must inform an alien

applying for permanent resident status of his eligibility to apply for benefits--including

waiver of inadmissibility--and must provide the alien an opportunity to apply.  *Id.*  For aliens

expressing fear of persecution or harm upon return to their country, the regulations provide

that the IJ must advise an alien that she may *apply*, and must provide the appropriate forms

to do so.  8 C.F.R. § 1240.11(c)(1); *see* 8 U.S.C. § 1158(a)(1) (providing that aliens present

in the United States "may apply" for asylum).  There is no question that the agency notified

---

[6]In his closing arguments to the IJ, Precaj's counsel made one passing reference to the relief sought by Precaj, arguing that Precaj's economic and family concerns "aren't necessarily illegitimate or false reasons to be applying for asylum." (App'x 102.)  Considering Precaj's tacit acceptance of the IJ's repeated characterizations of his application up to that point, this remark was not sufficient to notify the agency that he sought asylum as an alternate form of relief to withholding of removal.

Precaj of his right to apply for asylum, and that Precaj had ample opportunity to present his claim to the agency at his merits hearing.

Even if Precaj had properly raised and preserved his request for asylum before the IJ, his argument that the IJ erred by failing to consider his eligibility for asylum is not properly before the Court because he did not exhaust it before the agency. Federal courts cannot hear an appeal on a final order of removal where the administrative remedies have not been exhausted. 8 U.S.C. § 1252(d)(1). The purpose of the exhaustion requirement is:

> (1) to ensure that the INS, as the agency responsible for construing and applying the immigration laws and implementing regulations, has had a full opportunity to consider a petitioner's claims; (2) to avoid premature interference with the agency's processes; and (3) to allow the BIA to compile a record which is adequate for judicial review.

*Ramani v. Ashcroft*, 378 F.3d 554, 559 (6th Cir. 2004) (citations omitted). On appeal to the BIA, Precaj argued, without reference to his application for relief, that he met the criteria for asylum based on the evidence presented at his merits hearing. (*See* App'x 31, Pet'r Br. at 2 ("When Appellant's testimony is considered with the above [legal standards] in mind, a valid claim for asylum emerges.").) As relief, he requested an affirmative grant of asylum. (App'x 35.) He did not assert that he had previously applied for asylum, or that the IJ erred as a matter of procedure by failing to consider a properly raised request for asylum. Though the Court is troubled that the BIA disregarded Precaj's argument that he was substantively entitled to asylum without explaining its reason for doing so, his argument did not put the agency on notice of his claim of procedural error. The IJ's opinion stated that Precaj sought relief in the form of withholding of removal under the INA and the CAT, as well as voluntary

departure. (App'x 5.) Just as he did not object at the merits hearing, Precaj did not object to this characterization of his application on appeal to the BIA. While the BIA might have investigated whether the IJ should have evaluated his eligibility for relief that, according to the IJ's opinion, he had not requested, Precaj did not ask the BIA to do so, and the BIA was not obligated to consider a claim for asylum that was raised for the first time on appeal. *See Matter of J-Y-C-*, 24 I. & N. Dec. 260, 261 n.1 (BIA 2007) ("Because the respondent failed to raise this claim below, it is not appropriate for us to consider it for the first time on appeal."); *Matter of Jimenez-Santillano*, 21 I. & N. Dec. 567, 570 n.2 (BIA 1996) ("The record reflects . . . that this issue was neither raised before, nor ruled upon by the Immigration Judge. Therefore, we will not decide the issue, for it is not properly before us."). Thus, because this argument was not exhausted before the agency, the Court will not consider it. 8 U.S.C. § 1252(d)(1).

Even assuming that the IJ erred by failing to consider his claim for asylum, and even if Precaj had exhausted this argument before the agency, the Court would not remand this issue to the agency because the agency's findings would preclude Precaj from demonstrating eligibility for asylum. "Generally, where a reviewing court cannot sustain an agency decision, because the agency has failed to offer a legally sufficient basis for that decision, the appropriate remedy is to remand to the agency for further consideration." *Pickering v. Gonzales,* 465 F.3d 263, 270 (6th Cir. 2006).

> [A] "judicial judgment cannot be made to do service for an administrative judgment." Nor can an "appellate court . . . intrude upon the domain which Congress has exclusively entrusted to an administrative agency." A court of appeals "is not generally empowered to conduct a de novo inquiry into the

matter being reviewed and to reach its own conclusions based on such an inquiry."  Rather, "the proper course, except in rare circumstances, is to remand to the agency for additional investigation or explanation."

*INS v. Ventura*, 537 U.S. 12, 16 (2002) (citations omitted).  However, "'[n]o principle of administrative law or common sense requires us to remand a case in quest of a perfect opinion unless there is reason to believe that the remand might lead to a different result.'" *Shkabari v. Gonzales*, 427 F.3d 324, 328 (6th Cir. 2005) (quoting *Fisher v. Bowen*, 869 F.2d 1055, 1057 (7th Cir.1989)); *see Kobetic v. Comm'r of Soc. Sec.*, 114 F. App'x 171, 173 (6th Cir. 2004) ("When 'remand would be an idle and useless formality,' courts are not required to 'convert judicial review of agency action into a ping-pong game.'" (quoting *NLRB v. Wyman-Gordon Co.*, 394 U.S. 759, 766 n.6 (1969))).  Thus, the Court has declined to remand in instances where the agency's findings would render the applicant ineligible for the relief requested on appeal.  *See, e.g., Martini v. Mukasey*, 314 F. App'x 819, 826 (6th Cir. 2008) (declining to remand to the agency to consider a claim for humanitarian asylum).  In Precaj's case, the findings made by the agency on his claim for withholding of removal under the INA preclude him from demonstrating eligibility for asylum.

The pertinent issue with respect to Precaj's asylum claim is whether his evidence would suffice to meet the lower burden of proof for an asylum claim as compared to a claim for withholding of removal under the INA.  The showings required for asylum and for withholding of removal under the INA are similar.  To be eligible for asylum, an applicant must demonstrate that he or she qualifies as a refugee, i.e., that he or she has a "well-founded fear of persecution" on account of a protected ground.  8 U.S.C. §§ 1101(a)(42),

1158(b)(1)(B). To be eligible for withholding of removal under the INA, an applicant must demonstrate that his or her life or freedom would be threatened on account of a protected ground. 8 U.S.C. 1231(b)(3); 8 C.F.R. § 1208.16(b). However, withholding of removal requires a showing of a "clear probability" of persecution, which is more stringent than the burden required to establish eligibility for asylum. *Liti v. Gonzales*, 411 F.3d 631, 640 (6th Cir. 2005). The latter requires a showing of a "reasonable possibility" of persecution. *Perkovic v. INS*, 33 F.3d 615, 620 (6th Cir. 1994). The agency made several findings in Precaj's case that would undermine, if not preclude, an asylum claim, even under the lower burden of proof.

First, the agency determined that Precaj's "general and meager" testimony did not suffice to meet his burden of proof to show a possibility of future persecution.

> This Court can not even identify who the purported perpetrators would be if the respondent were to return. There's absolutely no evidence whatsoever other than the respondent's indication that he would suffer persecution at the hands of unknown individuals that there is any nexus to any protected ground.

(App'x 14.) The BIA noted that Precaj could not recall the details of persecution towards his family, and declined to offer the testimony of his parents who were present at the hearing. (App'x 2.) The IJ noted that Precaj's testimony "fits precisely" within the BIA's decision in *Matter of Y-B-*, 21 I. & N. Dec. 1136 (BIA 1998). (App'x 14.) In *Y-B-*, the BIA held that "general and vague" testimony does not suffice to meet the burden of proof for asylum. *Y-B-*, 21 I. & N. Dec. at 1139.

Second, the agency determined that Precaj's fear that he could be harmed by those who murdered his uncle for money could not be tied to a protected ground.[7] (App'x 17.) An applicant seeking asylum must establish a nexus between the persecution and a protected ground. 8 C.F.R. § 1208.13(b)(2)(i)(A).

Finally, the agency determined that, *even if* Precaj had demonstrated past persecution of his family by the communist regime, the Government successfully met its burden to show that conditions in Albania had changed. (App'x 3, 16.) A finding of changed circumstances rebuts the presumption of future persecution for an asylum claim. 8 C.F.R. § 1208.13(b)(i)(A).

Precaj challenges the agency's findings regarding past persecution and changed circumstances. For the reasons that follow, these challenges are without merit.

### 2. Past Persecution

Precaj challenges the agency's findings regarding past persecution. A showing of past persecution entitles the alien to a presumption of future persecution. 8 C.F.R. § 1208.13(b)(1) (asylum); 8 C.F.R. § 1208.16(b)(1) (withholding of removal). Precaj argues that the evidence in the record compels the conclusion that his family was persecuted by the communist government that previously ruled Albania. Precaj contends that the agency did not properly account for Precaj's young age at the time the persecution occurred when evaluating his inability to recall the details of that persecution, and that the agency should have considered

---

[7]The IJ determined that, at best, this claim could be characterized as a "blood feud," but that the State Department report indicated that blood feuds in Albania involve criminal networks rather than family kinship groups. (App'x 17.)

the asylum application of his mother as well as his family's history of persecution. He argues that the evidence compels the conclusion that the persecution of Precaj's family was politically motivated or was based on an intent to harm a particular social group, Precaj's family. However, Precaj's arguments are irrelevant to the disposition of his application for withholding of removal (and, by extension, his claim for asylum) because the IJ determined that, *even if* Precaj or his family had suffered past persecution, Precaj's application should be denied because the Government had rebutted the presumption of future persecution by showing that conditions in Albania had changed. (App'x 15.) The Government can rebut the presumption of future persecution with a showing, by a preponderance of the evidence, that there has been a "fundamental change in circumstances," such that the applicant no longer has a well-founded fear or persecution, 8 C.F.R. § 1208.13(b)(1)(i)(A) (asylum), or such that the applicant's life or freedom would not be threatened on account of a protected ground, 8 C.F.R. § 1208.16(b)(1)(i)(A) (withholding of removal).

### 3. Changed Circumstances

Precaj contends that the IJ erred by not shifting the burden of proof to the Government to rebut the presumption of future persecution by showing that circumstances in Albania have changed. This argument is without merit because the agency *assumed* that Precaj had demonstrated past persecution, and went on to consider whether the Government had rebutted the presumption of future persecution. (App'x 3, 16.) Precaj does not contend that the standard for showing changed circumstances is different for an asylum claim than for

withholding of removal,[8] nor has he identified a relevant distinction that would merit the agency's reconsideration of this issue. Thus, the agency's findings on his withholding claim apply with equal force to a claim for asylum.

Precaj also argues that the record compels a finding that he continues to be at risk for persecution in Albania. The existence of changed country conditions is a question of fact. *Pepaj v. Mukasey*, 509 F.3d 725, 728 (6th Cir. 2007). Thus, the agency's findings are subject to the deferential substantial-evidence standard of review. The agency relied upon reports from the State Department indicating that the communist government is no longer in power in Albania, that there have been no reports of politically motivated killings or disappearances, and that there is no evidence of systemic political persecution in Albania. (App'x 15.) This Court has often pointed to State Department reports as substantial evidence in support of the agency's finding of changed country conditions in Albania. *Ramaj v. Gonzales*, 466 F.3d 520, 531 (6th Cir. 2006) ("The country reports relied upon by the IJ constitute substantial evidence supporting the conclusion that country conditions in Albania have improved to the point that any presumption of a well-founded fear of future persecution is rebutted."); *Liti v. Gonzales*, 411 F.3d 631, 639 (6th Cir. 2005) (referring to reports and noting that "[w]here an Albanian asylum applicant has demonstrated past persecution based on the applicant's anti-communist activities, the collapse of the communist regime may be a sufficient change in country conditions to rebut that presumption"); *see also Macotaj v. Gonzales*, 424 F.3d 464 (6th Cir. 2005) (affirming a finding of changed country conditions in Albania). Although such reports

---

[8]At oral argument, Precaj's counsel conceded that the standards are the same.

"may be problematic sources on which to rely," they "'are generally the best source of information on conditions in foreign nations.'" *Mullai v. Ashcroft*, 385 F.3d 635, 639 (6th Cir. 2004) (quoting *Kokaj v. Ashcroft*, 100 F. App'x 506, 508 (6th Cir. 2004)).

Precaj objects to the agency's reliance upon the State Department reports, citing *Mece v. Gonzales*, 415 F.3d 562 (6th Cir. 2002). In *Mece*, this Court disparaged reliance on State Department reports in the face of the applicant's detailed testimony and evidence of persecution, noting that "speculation and broad political generalizations by the State Department cannot trump concrete, detailed, and adequately corroborated evidence of specific instances of persecution." *Id.* at 574 n.5. This is not such a case. Rather than offer "concrete, detailed, adequately corroborated evidence" in opposition to the State Department reports, Precaj relied on reports purporting to show what he describes as a "constant barrage of political fighting across party lines which has led to ongoing violence and chaos in Albania." (Pet'r Br. 27.) This evidence includes reports from 1996 documenting the detention of political opponents, and more recent reports describing ill-treatment of detainees, inhumane prison conditions, and the use of excessive force by the police. (App'x 124-222.) Precaj claims he is entitled to asylum based on the persecution of his family by the communist regime. The foregoing evidence does not undermine the State Department report in the record, much less compel the conclusion that there is a continued risk that opponents of the former communist regime would be targeted for persecution. *See Lumaj v. Gonzales*, 462 F.3d 574, 578 (6th Cir. 2006) (rejecting an asylum claim where "the Country Conditions Report for Albania indicates that while there is a danger of violence in Albania, it is due

mostly to individual acts or organized crime, and there is 'virtually no evidence that individuals are targeted for mistreatment on political grounds.'"); *Mullai v. Ashcroft*, 385 F.3d 635, 639 (6th Cir. 2004) (affirming denial of asylum claim where the applicant alleged persecution by the communist government of Albania, but her evidence "describe[d] the type of general civil disorder and lawlessness to which anyone living in Albania would be exposed" and did not demonstrate "that the current government [of Albania] would target her for persecution"). Because substantial evidence supports the agency's determination that conditions in Albania have changed, rebutting any presumption of future persecution in Precaj's case, the agency's denial of Precaj's claim for withholding of removal will be affirmed. Similarly, his request for remand to consider his eligibility for asylum cannot be granted because, even if he had not forfeited his asylum claim, this claim would be futile.

### 4. *Humanitarian Asylum*

Finally, Precaj contends that, notwithstanding changed circumstances in Albania, he is entitled to a determination of his eligibility for humanitarian asylum. This argument is not reviewable because he did not present it to the BIA. *See Liti v. Gonzales*, 411 F.3d 631, 641 (6th Cir. 2005) (not reaching a claim for humanitarian asylum where it was not raised to the BIA); *Moran-Quinteros v. Holder*, 352 F.App'x 974, 980 (6th Cir. 2009) (same). Moreover, this argument was not raised in his written submissions to the Court. The Court is not required to consider arguments that are raised for the first time at oral argument. *See United States v. Mellies*, 329 F. App'x 592, 605 (6th Cir. 2009) (citing Fed. R. App. P. 28(a)(9)(A)).

### III. CONCLUSION

In summary, we decline to review Precaj's argument that the IJ failed to consider his asylum claim because he failed to exhaust this issue before the agency. In any event, any error by the agency is harmless because Precaj effectively forfeited his claim by failing to present it to the IJ when given the opportunity to do so. Moreover, the agency's finding that the Government rebutted the presumption of future persecution by showing that conditions in Albania have changed is supported by substantial evidence. In Precaj's case, this finding precludes him from obtaining the relief of withholding of removal as well as asylum. Precaj does not challenge agency's denial of his alternative requests for protection under the CAT or for voluntary departure. For the foregoing reasons, therefore, Precaj's petition for review is **DENIED**.