NOT RECOMMENDED FOR PUBLICATION
File Name: 22a0166n.06

Case No. 21-3675

# UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

|  |  |  |
|---|---|---|
| ARTURO RAMOS-VILLEDA, | ) | **FILED** |
| | ) | Apr 22, 2022 |
| Petitioner, | ) | DEBORAH S. HUNT, Clerk |
| | ) | |
| v. | ) | ON PETITION FOR REVIEW |
| | ) | FROM THE UNITED STATES |
| | ) | BOARD OF IMMIGRATION |
| MERRICK B. GARLAND, Attorney General, | ) | APPEALS |
| | ) | O P I N I O N |
| Respondent. | ) | |
| | ) | |

BEFORE: BATCHELDER, COLE, and GIBBONS, Circuit Judges.

COLE, Circuit Judge. Petitioner Arturo Ramos-Villeda, a native and citizen of Mexico, petitions for review of the denial by the Board of Immigration Appeals ("BIA") of his requests for withholding of removal and protection under the Convention Against Torture ("CAT"). Before this court, Ramos-Villeda also argues that the immigration judge ("IJ") violated his constitutional due process rights by clearly erring when it concluded that he failed to establish his life would be endangered, or that he would be subject to torture, upon removal to Mexico. For the following reasons, we deny his petition for review.

## I. BACKGROUND

Petitioner Ramos-Villeda is a father and 37-year-old native citizen of Mexico. He entered the United States from Mexico without admission or parole in 1998 or 1999. Apart from one year when he returned to Mexico to see his family, Ramos-Villeda testified that he lived in the United

States until he was deported in 2008. He reentered the United States in 2009, again without admission or parole. On March 14, 2012, the Department of Homeland Security served Ramos-Villeda with a Notice to Appear ("NTA") and charged him with removability pursuant to 8 U.S.C. § 1182(a)(6)(A)(i).

Through counsel, Ramos-Villeda admitted the allegations in the NTA, conceded removability as charged, and applied for withholding of removal based solely on membership in a particular social group and the CAT. He also sought protection under the CAT.

On May 8, 2018, Ramos-Villeda appeared before the IJ with counsel for his merits hearing. Ramos-Villeda testified as the sole witness. Much of his testimony focused on his family in Hidalgo, Mexico, including his sister, his parents, and his two children. He explained that his particular social group—which he identifies as the "immediate family members" of his sister, Margarita—warrants withholding of removal. Ramos-Villeda argued that he would suffer future harm due to his family ties because some of his family members have been threatened by the cartel.

For example, according to Ramos-Villeda, his uncle, Felix Mendoza, was murdered in 2002 by unidentified individuals because Mendoza refused their demands for money. Ramos-Villeda testified that, even though the family filed a police report, the police did not help because they were either corrupt or afraid.

Ramos-Villeda also testified that Margarita received threatening phone calls every month or two because of the money she earned in her political position as a district deputy. He believes the threats come from the cartel. Margarita was allegedly told that if she did not give the cartel money, they would harm her or her family—and Ramos-Villeda testified that these individuals mentioned his name specifically. None of the other family members, including those who live in Hidalgo, has received any threats.

Because of these threats, Ramos-Villeda believes that the same individuals "might think that [he] ha[s] money or . . . that they can get information from [him]." (A.R. 131.) Thus, he fears returning to Mexico. (A.R. 131–35.) He believes the cartel is generally "committed to extortion or to intimidating people," and some police are corrupt and unhelpful. (A.R. 131.) Ramos-Villeda does not think he could safely relocate elsewhere in Mexico because "[s]omehow, they would find out that [he has] arrived from the United States and the cartel is all over the country." (A.R. 133.) Despite this fear, he acknowledged that he was never harmed or threatened when he returned to Mexico between 2008 and 2009.

Ramos-Villeda presented documentary evidence in addition to his testimony. Specifically, he submitted the following: (1) a letter from Margarita describing the threats she has received; (2) the 2012 and 2013 Human Rights Reports for Mexico; and (3) several articles detailing the conditions in Mexico.

The IJ denied Ramos-Villeda's applications for withholding of removal and CAT protection. The IJ denied Ramos-Villeda's application for withholding of removal because he did not meet his burden of demonstrating past persecution or a clear probability of future persecution, based on his membership in a particular social group. The IJ also determined that Ramos-Villeda is ineligible for CAT protection because the record evidence did not show that he was likely to be tortured in Mexico "by or at the instigation of or with the consent or acquiescence of a public official." (A.R. 85.)

On appeal, the BIA rejected Ramos-Villeda's due process challenge, concluding that he received a full and fair hearing and had not demonstrated any constitutional error, and dismissed the appeal. The BIA affirmed the IJ, provided additional rationale for its decision, and dismissed the appeal.

## II. ANALYSIS

### A.  Standard of Review

Where, as here, the BIA both adopts and supplements the IJ's decision, the BIA's decision constitutes the final agency determination for purposes of judicial review. *Marikasi v. Lynch*, 840 F.3d 281, 287 (6th Cir. 2016). "[W]e are also empowered to review the IJ's opinion to the extent that the BIA adopts that opinion." *Id.* (quoting *Gaye v. Lynch*, 788 F.3d 519, 526 (6th Cir. 2015)). We review questions of law de novo, and we review the agency's findings of fact for substantial evidence. *Khalili v. Holder*, 557 F.3d 429, 435 (6th Cir. 2009). "The substantial-evidence standard requires us to defer to the agency's findings of fact 'if supported by reasonable, substantial, and probative evidence on the record considered as a whole.'" *Abdurakhmanov v. Holder*, 735 F.3d 341, 345 (6th Cir. 2012) (quoting *Mikhailevitch v. INS*, 146 F.3d 384, 388 (6th Cir. 1998)).  Under this standard, we will not reverse a factual finding "unless we find that the evidence not only supports a contrary conclusion, but compels it." *Id.* (internal quotation marks omitted) (quoting *Ceraj v. Mukasey*, 511 F.3d 583, 588 (6th Cir. 2007)); *see also Allabani v. Gonzales*, 402 F.3d 668, 674 (6th Cir. 2005) ("We will reverse only if the evidence presented by [the noncitizen] was such that a reasonable factfinder would have to conclude that the requisite fear of persecution existed").

### B.  Withholding of Removal

An applicant is eligible for withholding of removal if he proves a "clear probability" of "persecution" on account of "race, religion, nationality, membership in a particular social group, or political opinion." *Pablo-Sanchez v. Holder*, 600 F.3d 592, 594 (6th Cir. 2010); 8 U.S.C. § 1231(b)(3)(A).  To prove there is a clear probability of persecution, the applicant must show "it is more likely than not" that he will suffer harm if he is removed to his home country.  8 C.F.R.

§ 1208.16(b)(2). More specifically, the "applicant must produce evidence, either direct or circumstantial, from which it is reasonable to believe that the harm was or would be motivated in part by an actual or imputed protected ground." *Matter of J-B-N- & S-M-*, 24 I & N Dec. 208, 211 (BIA 2007). This is a more stringent burden of proof than the one for asylum. *Mikhailevitch*, 146 F.3d at 391.

An applicant who shows he experienced past persecution due to a protected ground is entitled to a presumption of future persecution on the same basis. 8 C.F.R. § 1208.16(b)(1)(i). In the absence of past persecution, the applicant retains the burden to show a clear probability of future persecution. *Id.* § 1208.16(b)(2).

### i. Past Persecution

Both the BIA and IJ (together, the "agency") determined that Ramos-Villeda did not establish past persecution due to a protected ground. Ramos-Villeda did not advance any specific challenge to this conclusion in his opening brief before this court, so he has forfeited any argument that he demonstrated past persecution in Mexico. *See Island Creek Coal Co. v. Wilkerson*, 910 F.3d 254, 256 (6th Cir. 2018) (quoting *Golden v. Comm'r*, 548 F.3d 487, 493 (6th Cir. 2008)); *United States v. White*, 920 F.3d 1109, 1122–23 n.4 (6th Cir. 2019) (Clay, J., concurring in part and dissenting in part). To establish his eligibility for withholding of removal, Ramos-Villeda must therefore show a clear probability of future persecution.

### ii. Future Persecution

To establish a clear probability of future persecution, Ramos-Villeda must show with objective evidence that "it is more likely than not that [he] would [persecuted]" in Mexico if he is

removed. 8 C.F.R. § 1208.16(b)(2); *INS v. Cardoza-Fonseca*, 480 U.S. 421, 423 (1987) (quoting *INS v. Stevic*, 467 U.S. 407, 729–30 (1984)).

The agency found that Ramos-Villeda: (a) has not demonstrated that his membership in a particular social group would cause him to be targeted for harm; (b) has not claimed a fear of persecution based on political opinion; (c) has not established an objectively reasonable fear of future persecution; and (d) has not shown it would be unreasonable for him to relocate within Mexico to avoid persecution. Ramos-Villeda contests each of these conclusions.

### a.  Particular Social Group

The agency found that family is a cognizable social group, but that Ramos-Villeda failed to show he would be harmed on account of his membership in his family. In particular, the IJ reviewed Margarita's explanatory letter, which explained that she received anonymous threats because of the perceived "economic position of [the] family . . . permits them to pay periodic quotas." (A.R. 95.) Their perceived wealth was based at least partly on the fact that Ramos-Villeda was working in the United States and could send money home to his family in Mexico. The IJ concluded that Ramos-Villeda's "true fear lies in a particular social group that has been rejected by" this court: being perceived as wealthy. (A.R. 95–96.) The agency also found that Ramos-Villeda did not establish a nexus between any membership in a valid particular social group and the harm he fears.

In *Sanchez-Robles v. Lynch*, we found that membership in a particular social group does not include "nationals of a particular country who return to that country with the perception that they are wealthy." 808 F.3d 688, 690 (6th Cir. 2015) (citation omitted). Even when members of one family receive threats based on perceived wealth, their membership cannot "be meaningfully distinguished from other individuals in the general populace who might be targeted by criminals."

*Id.* (citation omitted). For this reason, we agree with the agency's determination that Ramos-Villeda actually fears harm based on his economic position and not based on his familial membership.

Furthermore, even if Ramos-Villeda's familial membership is the particular social group he is fearful of belonging to, he has not shown that the individuals who have threatened his sister were motivated to do so because of the family membership itself. *See Akhtar v. Gonzalez*, 406 F.3d 399, 405–06 (6th Cir. 2005) ("[A]bsent a pattern of persecution tied to the [] applicant himself . . . acts of violence against family members do not necessarily demonstrate a well-founded fear of persecution." (citation omitted)). Ramos-Villeda has not shown the threats his sister received were motivated by more than a desire for money; the criminals' stated belief that the family has money is not sufficient to establish that any persecution would occur because of family membership. *See Sanchez-Robles*, 808 F.3d at 692. Accordingly, Ramos-Villeda has failed established a nexus between membership in a particular social group and the harm he fears.

### b. *Political Opinion*

Ramos-Villeda argues on appeal that the IJ erred by not considering a claim that he faces future persecution in Mexico due to his political opinion. The BIA affirmed the IJ's decision not to address whether Ramos-Villeda asserted a claim of fear based on political opinion in his application for relief. Although Ramos-Villeda argued about political opinion as a basis for withholding of removal, the record demonstrates that he did not apply for withholding based on his political opinion. Nor did he clearly articulate this argument before the IJ. Thus, the agency did not err in choosing not to address this basis. *See Precaj v. Holder*, 376 F. App'x 553, 556–57 (6th Cir. 2010) (holding that an applicant "effectively forfeited" consideration of his asylum claim because he did not present it to the IJ).

Moreover, had Ramos-Villeda stated a claim of fear based on political opinion, the agency correctly noted that the criminals' attempt to extort Margarita was insufficient to show persecution due to political opinion. Ramos-Villeda specifically testified that Margarita had never done anything politically that the criminals would not like, nor had she ever spoken out publicly against the cartel. Because there is no evidence that Ramos-Villeda or his sister has been targeted for their political opinions, he has not shown that his family's political opinions have been imputed to him or that he would suffer persecution for that reason. *See Akhtar*, 406 F.3d at 405–06.

In sum, we cannot say that the evidence in this case compels us to conclude that Ramos-Villeda has established a nexus between his membership in a particular social group or his political opinion and the future harm he fears. *See Abdurakhmanov*, 735 F.3d at 345. Because Ramose-Villeda has not adequately established a basis that supports his eligibility for withholding of removal, we must deny his petition. Accordingly, we need not consider whether Ramos-Villeda has an objectively reasonable fear of persecution or whether he could reasonably relocate to Mexico.

## C. Denial of CAT Protection

To be eligible for CAT protection, an applicant must establish that it is more likely than not that he would be subject to torture "inflicted by, or at the instigation of, or with the consent or acquiescence of, a public official . . . or other person acting in an official capacity." 8 C.F.R. § 1208.18(a)(1). Ramos-Villeda must show that "it is more likely than not that he . . . would be tortured if removed." *Id.* § 1208.16(c)(2); *see also Matter of Z-Z-O-*, 26 I & N Dec. 586, 591–92 (BIA 2015).

Here, the agency denied Ramos-Villeda's application for protection under the CAT because "[t]here is insufficient evidence in the record that the government of Mexico is interested

in torturing [him] or would acquiesce[] in his torture." (A.R. 97–98.) Although Ramos-Villeda cites a report that public officials in Mexico have condoned torture in the past, the IJ noted that Mexico is "taking steps and making strides" to combat crime. (A.R. 97.) The IJ further noted that Ramos-Villeda may be "in a better position" to get assistance from the Mexican government than a typical citizen would be because Margarita is a member of the Mexican government. (*Id.*)

The record, taken as a whole, does not show that a Mexican government official is "more likely than not" to instigate, consent, acquiesce, or torture Ramos-Villeda specifically. *See Torres v. Sessions*, 728 F. App'x 584, 588 (6th Cir. 2018). Accordingly, we must deny the petition on this ground too.

### D. Due Process Violation

We review de novo allegations of due process violations that occur in the context of immigration proceedings. *Mikhailevitch*, 146 F.3d at 391 (citation omitted). A due process violation "occurs when the proceeding was so fundamentally unfair that the [noncitizen] was prevented from reasonably presenting his case." *Hassan v. Gonzales*, 403 F.3d 429, 436 (6th Cir. 2005) (internal quotation and citation omitted). Accordingly, we review due process challenges in two steps: "[F]irst, whether there was a defect in the . . . proceeding; and second, whether the [noncitizen] was prejudiced because of it." *Vasha v. Gonzales*, 410 F.3d 863, 872 (6th Cir. 2005).

Ramos-Villeda does not identify a defect in the proceedings before the immigration judge. Instead, he assumes that that "it is clear a defect in the removal proceedings existed due to the failure of the IJ and BIA to consider the effect of [his] removal." (Pet. Br. 52.) He also summarily concludes that the agency's analysis contained "serious defects in analyzing past persecution, future persecution, the willingness, and ability of the Government of Mexico to control the persecutors, and in defining the particular social group." (*Id.*) Beyond these overly broad

conclusions, there is no other indication that Ramos-Villeda did not have a full and fair hearing. We therefore deny his petition on this basis.

### III.  CONCLUSION

For the foregoing reasons, we deny Ramos-Villeda's petition for review.