NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 10a0200n.06

09-3298

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

**FILED**
**Mar 30, 2010**
LEONARD GREEN, Clerk

SILVIA VERONICA MENDEZ-CORONADO,
KEVIN JOSUE PEREZ-MENDEZ, HECTOR
ODILMAR PEREZ,

      Petitioners,

          v.

ERIC H. HOLDER, JR., Attorney General,

      Respondent.

On Petition for Review from
the Board of Immigration
Appeals

_____/

**Before:**    **GUY, COLE, and SUTTON, Circuit Judges.**

    **RALPH B. GUY, JR., Circuit Judge.**    Petitioners, all natives and citizens of

Guatemala, seek review of the BIA's final order of removal denying the application of Silvia

Mendez-Coronado for relief, as well as the derivative applications of her husband Hector

Odilmar Perez and their minor son Kevin Josue Perez-Mendez.[1]  Petitioners argue that

substantial evidence does not support the BIA's determination that Mendez-Coronado failed

to establish grounds for withholding of removal or relief under the Convention Against

_____

[1]A younger child, Anthony Perez-Mendez, is a citizen of the United States.

Torture (CAT).  After review of the record, we deny the petition for review.


**I.**

Silvia Mendez-Coronado, the lead petitioner, was born in Guatemala on January 4, 1978; married Hector Perez on August 2, 1996; and entered the United States illegally in October 1998.  Mendez-Coronado stayed in California, where her mother and several siblings lived, for approximately four months before moving with her husband and son to Ohio.  On October 28, 2002, four years after entering the United States, Mendez-Coronado filed an application for asylum stating that she left Guatemala because guerrillas had attempted to recruit her and threatened her when she refused to join them.[2]

In November 2003, after Mendez-Coronado was interviewed, petitioners were issued Notices to Appear charging them with removability under 8 U.S.C. § 1182(a)(6)(A)(i).  Petitioners conceded removability before an Immigration Judge (IJ), as all three had entered the United States illegally.  Seeking relief from removal, Mendez-Coronado renewed her request for asylum and sought withholding of removal and relief under the CAT.  Petitioners also applied, in the alternative, for voluntary departure.

The only witness at the merits hearing held in November 2007, Mendez-Coronado testified that in 1998 some guerillas came to her town and tried to recruit her and several other young women to cook and clean for them.  When the women refused, the guerillas threatened to return and take them by force.  Afraid, Mendez-Coronado restricted her

---

[2]Mendez-Coronado testified that she did not apply for asylum sooner because she was afraid of being arrested, did not know where to get help, and did not have money to pay to go through the process.

activities and stayed in the house. A few days later, a letter with her name on it was delivered to her house. The letter threatened torture and death because she had refused to join the guerillas. She did not report this to the authorities, and no longer had the letter because she destroyed it. Neither she nor her husband received any further threats before leaving Guatemala a few months later. A female cousin living nearby received a similar threatening letter and moved away to the capital city. Asked why she did not do the same, Mendez-Coronado explained that she did not know anyone in the capital and that she believed that no one is safe in Guatemala. Instead, Mendez-Coronado came to California, where her mother had been living for a number of years.

Mendez-Coronado also testified that her father, a soldier in the Guatemalan army, was murdered in 1996. Her father was driving a truck that was stopped by five men who made her father get out of the truck and then shot him in the head. Her father was not robbed, and the other two men with him were not harmed. Although Mendez-Coronado had not been in Guatemala during the previous ten years and did not have much contact with anyone living there, she testified that she feared harm if she were to return because the guerrillas are "present there all the time." She acknowledged that there had been elections, a change of government, and an end to the civil war in Guatemala, but stated that there were "always wars going on."

The Immigration Judge (IJ) found that the asylum application was time barred, a determination that was affirmed by the BIA and is not challenged by petitioners on appeal.[3]

---

[3]Petitioners concede that because the asylum application was denied solely on the ground that it was untimely and the issue did not present a constitutional claim or question of law, this court is without

The IJ also found that Mendez-Coronado, although credible, failed to establish (1) either past persecution or a clear probability of future persecution on account of a protected ground as is required for withholding of removal; or (2) that it was more likely than not that she would be tortured if she returned to Guatemala as required for relief under the CAT. The BIA agreed with the IJ's findings and dismissed petitioner's appeal in a final decision entered on February 24, 2009. This appeal followed.[4]

## II.

When, as here, the BIA reviews the IJ's decision and issues its own opinion, we review the BIA's decision as the final agency determination. *See Morgan v. Keisler*, 507 F.3d 1053, 1057 (6th Cir. 2007). To the extent that the BIA adopts the IJ's reasoning, we also review those portions of the IJ's decision. *See Khalili v. Holder*, 557 F.3d 429, 435 (6th Cir. 2009). Questions of law are reviewed de novo, substantial deference is given to the BIA's interpretation of the statute and applicable regulations, and factual findings must be sustained if their determination is "supported by reasonable, substantial, and probative evidence on the record considered as a whole." *INS v. Elias-Zacarias*, 502 U.S. 478, 481 (1992). Under the substantial evidence standard, we may not reverse simply because we would have decided differently. *See Gishta v. Gonzales*, 404 F.3d 972, 978 (6th Cir. 2005). Rather, "the administrative findings of fact are conclusive unless any reasonable adjudicator

---

jurisdiction to review the decision denying the asylum claim. *Almuhtaseb v. Gonzales*, 453 F.3d 743, 747-48 (6th Cir. 2006).

[4]The petition for review automatically terminated the grant of voluntary departure, *see* 8 C.F.R. § 1240.26(i) (2009), and this court denied petitioners' motion for stay of removal on November 23, 2009.

would be compelled to conclude to the contrary." 8 U.S.C. § 1252(b)(4)(B).

## A.    Withholding of Removal under the INA

For withholding of removal under the Immigration and Nationalization Act (INA), an applicant must demonstrate that, if removed to his home country, his "life or freedom would be threatened" on account of his race, religion, nationality, membership in a particular social group, or political opinion. 8 U.S.C. § 1231(b)(3)(A). To meet this burden, the applicant must establish a clear probability of persecution, meaning that "it is more likely than not" that he would be subject to persecution upon his return. *INS v. Stevic*, 467 U.S. 407, 413, 424 (1984); *see also Pilica v. Ashcroft*, 388 F.3d 941, 951 (6th Cir. 2004). If the applicant proves past persecution, "there is a presumption, subject to rebuttal by the Government, that his 'life or freedom would be threatened in the future' in the country of removal." *Gjyzi v. Ashcroft*, 386 F.3d 710, 715 (6th Cir. 2004) (quoting 8 C.F.R. § 208.16(b)(1)(i)); *see also Almuhtaseb v. Gonzales*, 453 F.3d 743, 750 n.6 (6th Cir. 2006) (recognizing that presumption applies to withholding of removal).

Mendez-Coronado claims that she suffered past persecution in Guatemala as a result of having refused to join the guerrillas. According to her testimony, which the IJ found credible, the guerrillas threatened to return and take her with them by force, and then sent her a letter a few days later threatening torture and death for refusing to go with them. No physical harm came to her or her husband, however, and she received no further threats before leaving Guatemala a few months later. Although the term "persecution" is not defined by the INA, we have held that persecution "'requires more than a few isolated

incidents of verbal harassment or intimidation, unaccompanied by any physical punishment, infliction of harm, or significant deprivation of liberty.'" *Gilaj v. Gonzales*, 408 F.3d 275, 284 (6th Cir. 2005) (quoting *Mikhailevitch v. INS*, 146 F.3d 384, 390 (6th Cir. 1998)). In this case, the isolated and unfulfilled threats do not constitute past persecution, and no presumption of future persecution arises. *See Castellano-Chacon v. INS*, 341 F.3d 533, 550 (6th Cir. 2003).

Also, the BIA found that there was no evidence that her father's murder two years earlier was on account of a protected ground, or on a ground that related to her in particular. Petitioners do not challenge this determination on appeal. The BIA's conclusion that Mendez-Coronado failed to demonstrate past persecution is supported by substantial evidence.

Next, the BIA concluded that Mendez-Coronado failed to otherwise establish a clear probability of future persecution on account of one of the enumerated grounds. Asserting that her refusal to go with the guerrillas would be deemed to be opposition to their cause, Mendez-Coronado claimed it was more likely than not that she would be persecuted on the basis of imputed political opinion if she were to return to Guatemala. Although the IJ accepted that the feared persecution would be on the basis of imputed political opinion, the Supreme Court rejected a similar asylum claim on the grounds that the petitioner's resistence to recruitment by the guerrillas during the Guatemalan civil war was not an expression of political opinion. *See Elias-Zacarias*, 502 U.S. at 482. The Court explained that the persecution must turn on the "*victim's* political opinion, not the persecutor's." *Id*.; *see also*

*Pascual v. Mukasey*, 514 F.3d 483, 486 (6th Cir. 2007) (holding that abduction of petitioner by guerrillas during the Guatemalan civil war was not persecution based on the *victim's* political opinion).  In this case, there is little basis to conclude that persecution of Mendez-Coronado would be on the basis of *her* political opinion given her testimony that the guerrillas sought to recruit her to cook and clean for them.

Our decision need not rest on this basis, however, because substantial evidence supports the BIA's finding that Mendez-Coronado failed to demonstrate a clear probability that she would suffer persecution at the hands of the guerrillas if she were to return to Guatemala.  In support of her claim, Mendez-Coronado expressed the belief that, despite the end of the civil war and the election of a new government, the guerrillas continued to have a presence in Guatemala and the government would not be able to protect her.  She conceded, as she must, that conditions have improved, but argued based on the State Department's 2006 Country Reports that serious problems remained of human rights violations and widespread societal violence.  The Country Reports reflected continued human rights violations by members of the security forces and police, but made no mention of ongoing guerrilla activities or forced recruitments.  Nor does the general level of societal violence establish persecution. *See Castellano-Chacon*, 341 F.3d at 550; *Almuhtaseb*, 453 F.3d at 750 (holding that fear of the generalized possibility of persecution is insufficient for withholding of removal).  The BIA's denial of withholding of removal under the INA was supported by substantial evidence.

**B.      Relief under the CAT**

To qualify for withholding of removal under the CAT, the applicant need not demonstrate that the harm would be on account of an enumerated ground, but "must establish a 'particularized threat of torture.'" *Almuhtaseb*, 453 F.3d at 751 (quoting *Castellano-Chacon*, 341 F.3d at 551). The BIA agreed with the IJ that Mendez-Coronado did not establish that "it is more likely than not" that she would be tortured upon her return to Guatemala. 8 C.F.R. § 1208.16(c)(2). Although Mendez-Coronado asserts that this was error, no argument or citation to the record or any case law was offered in support of this claim. *See Al-Najar v. Mukasey*, 515 F.3d 708, 717 (6th Cir. 2008) (citing *United States v. Villareal*, 491 F.3d 605, 611 (6th Cir. 2007)) (observing that "it is a settled appellate rule that issues adverted to in a perfunctory manner, unaccompanied by some effort at developed argumentation, are deemed waived"). Not only is this claim deemed waived, but also it is clear that the BIA's denial of relief under the CAT is supported by substantial evidence.

Under the CAT, "torture" is limited to "an extreme form of cruel and inhuman treatment and does not include lesser forms of cruel, inhuman or degrading treatment or punishment that do not amount to torture." 8 C.F.R. § 1208.18(a)(2). In determining whether it is more likely than not that the applicant would be tortured if returned to the country of removal, all evidence should be considered, including, "evidence of past torture inflicted on the applicant"; the applicant's ability to "relocate to a part of the country of removal where he or she is not likely to be tortured"; "gross, flagrant or mass violations of human rights within the country of removal"; and other "relevant information regarding conditions in the country of removal." 8 C.F.R. § 208.16(c)(3)(i)-(v).

Mendez-Coronado does not argue that consideration of these factors compel a finding that she would more likely than not be subjected to torture upon her return to Guatemala. The end of the civil war represents changed country conditions that make it less likely that she would be tortured by guerrillas for resisting their recruitment efforts. Moreover, as the IJ found, at the time of the hearing there was no evidence of significant human rights violations by the guerrillas or that the torture she feared would be "by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity." 8 C.F.R. § 1208.18(a)(1).

Accordingly, the petition for review is **DENIED**.