NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 10a0655n.06

No. 09-3188

## UNITED STATES COURT OF APPEALS
## FOR THE SIXTH CIRCUIT

**FILED**

**Oct 19, 2010**

LEONARD GREEN, Clerk

KHADIJETOU THIAM,                        )
                                         )
        Petitioner,                      )
                                         )
v.                                       )    ON PETITION FOR REVIEW OF
                                         )    AN ORDER OF THE BOARD OF
DEPARTMENT OF HOMELAND SECURITY;         )    IMMIGRATION APPEALS
ERIC H. HOLDER, JR., Attorney General,   )
                                         )
        Respondents.                     )
                                         )

Before: GIBBONS and KETHLEDGE, Circuit Judges; SARGUS, District Judge.[*]

KETHLEDGE, Circuit Judge.  Khadijetou Thiam petitions for review of an order of the

Board of Immigration Appeals denying her requests for asylum, withholding of removal, and relief

under the Convention Against Torture.  We dismiss the petition in part for lack of jurisdiction and

deny the remainder.

I.

Thiam was born in Senegal but is a citizen of Mauritania.  At some point (the parties dispute

when) she came to the United States.  On November 10, 2003, she filed an application for asylum

with the Department of Homeland Security (DHS), in which she claimed to fear persecution on

_____

[*]The Honorable Edmund A. Sargus, Jr., United States District Judge for the Southern District
of Ohio, sitting by designation.

account of political opinion if removed to Mauritania. An asylum officer denied Thiam's application. DHS thereafter instituted removal proceedings, charging Thiam with being removable for having entered the United States without valid entry documents. *See* 8 U.S.C. §§ 1182(a)(7)(A)(i)(I), 1227(a)(1)(A). Thiam conceded removability, but sought asylum, withholding of removal, and relief under the Convention Against Torture.

At a hearing before an immigration judge (IJ), Thiam claimed that she had been persecuted in Mauritania because of her membership in Action for Change, a political party that opposed then-President Taya's authoritarian regime and sought to protect the rights of Mauritania's Black Moor ethnic group. Thiam testified that, in January 2002, the government outlawed the party and arrested its leader. Thiam, along with several hundred other supporters of the party, protested in the streets of Mauritania's capital city. She was arrested, again along with many other demonstrators, after refusing an order from the police to disperse. For the next ten days, she was detained in what she described as a filthy, crowded jail cell. Thiam claimed that she was interrogated and beaten by the guards on a daily basis, although she did not allege any serious injuries or report any medical treatment. She also claimed that she was forced to sleep naked, and that she was given only small amounts of rice and water each day.

Thiam testified that she was released after ten days of detention, but that the police instructed her to return to the police station every morning. She said that, when she did so, the police insulted her and forced her to clean the jail cells. After roughly a week of this treatment, Thiam left Mauritania for Senegal.

According to Thiam, she arrived in the United States using a false passport on November 20, 2002. The immigration authorities could find no record, however, of her entry under the assumed name she claimed to have used. So the IJ concluded that Thiam had failed to prove her date of arrival by clear and convincing evidence, and thus rejected her asylum application as untimely because she had not shown that she applied for asylum within one year of arriving in the United States. *See* 8 U.S.C. § 1158(a)(2)(B). With regard to Thiam's withholding claim, the IJ commented that Thiam's allegations, if believed, likely would have amounted to past persecution. The IJ did not believe her story, however, because of inconsistences between her written asylum application and her oral testimony, her indecisive demeanor during cross-examination, and the absence of various pieces of corroborating evidence that the IJ thought should have been reasonably available. The IJ also concluded that Thiam had failed to establish any likelihood of torture if removed to Mauritania.

On appeal, the Board affirmed the IJ's conclusion that Thiam's asylum application was untimely. The Board likewise affirmed the IJ's denial of withholding, but for reasons different from those given by the IJ. Rather than endorsing the IJ's adverse-credibility finding, the Board reasoned that Thiam's allegations, even if believed, did not amount to past persecution. The Board further concluded that the ouster of President Taya from power in 2005 meant that Thiam did not face a serious threat of future persecution in Mauritania. Finally, the Board echoed the IJ's conclusion that Thiam had failed to prove her claim for relief under the Convention Against Torture.

This petition for review followed.

II.

Thiam first argues that the Board erred in rejecting her asylum application as untimely. But 8 U.S.C. § 1158(a)(3) provides that "[n]o court shall have jurisdiction to review any determination" that an alien missed the one-year limit on applying for asylum. And although 8 U.S.C. § 1252(a)(2)(D) restores jurisdiction to consider "constitutional claims or questions of law," Thiam's arguments fall within neither of those exceptions. She has not identified any error in the Board's statement of the governing law; her complaint, rather, is that the Board misapplied that law in finding that she failed to prove her date of arrival in the United States. A challenge to the Board's application of settled legal principles does not raise a "question[] of law" within the meaning of § 1252(a)(2)(D). *See Almuhtaseb v. Gonzales*, 453 F.3d 743, 748 (6th Cir. 2006). Thiam likewise cannot elevate her disagreement with the Board's factual conclusion into a "constitutional claim[]" by insisting that the Board's decision denied her due process. Her dispute concerns the merits of the Board's determination, rather than any defect in the procedure it employed. *See, e.g.*, *Garcia-Aguillon v. Mukasey*, 524 F.3d 848, 849-50 (8th Cir. 2008); *Torres-Aguilar v. INS*, 246 F.3d 1267, 1271 (9th Cir. 2001). We therefore lack jurisdiction to consider Thiam's asylum claim.

But we have jurisdiction to consider her request for withholding of removal. That form of mandatory relief prevents the immigration authorities from removing an alien to a particular country "if the Attorney General decides that the alien's life or freedom would be threatened [there] because of the alien's race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1231(b)(3)(A). The burden is on the alien, *see* 8 C.F.R. § 1208.16(b), to show "that it is more likely than not that [she] would be subject to persecution on one of the specified

grounds." *INS v. Stevic*, 467 U.S. 407, 429-30 (1984). The alien may satisfy that burden in either of two ways: by proving the requisite threat of future persecution directly, or by proving *past* persecution, which gives rise to a rebuttable presumption of future persecution. *See* 8 C.F.R. § 1208.16(b)(1), (2).

Thiam primarily contends that her allegations of mistreatment in Mauritania, which the Board credited for the purposes of its decision, amounted to past persecution and thus triggered a presumption of future persecution. Even if we accept that premise, however, the Board had sufficient reason to find that presumption rebutted here. As the Board observed, Thiam's claimed basis for fearing persecution was her opposition to President Taya's government, and Taya was ousted from power in 2005. Moreover, although the State Department's 2005 country report documented continuing human-rights problems in Mauritania, it did not suggest that opponents of Taya's regime were subject to lingering abuse. Because we cannot say that "any reasonable adjudicator would be compelled to conclude to the contrary," 8 U.S.C. § 1252(b)(4)(B), the Board's conclusion is supported by substantial evidence.

The same is true of the Board's conclusion that Thiam was not entitled to relief under the Convention Against Torture. To be eligible for that relief, Thiam must show "that it is more likely than not that . . . she would be tortured if removed" to Mauritania. 8 C.F.R. § 1208.16(c)(2). Torture is defined as "any act by which severe pain or suffering, whether physical or mental, is intentionally inflicted on a person," for one of several enumerated purposes, "by or at the instigation of or with the consent or acquiescence of" the government. *Id.* § 1208.18(a)(1); *see also id.* § 1208.18(a)(2) ("[t]orture is an extreme form of cruel and inhuman treatment"). The most serious mistreatment that

Thiam alleged was repeated beatings during her detention. She did not testify to any serious injury or need for medical attention. In light of the restrictive definition employed by the governing regulations, the Board did not err in concluding that this mistreatment was not torture. *See Shkulaku-Purballori v. Mukasey*, 514 F.3d 499, 501, 503 (6th Cir. 2007). Nor did Thiam give any other reason to think that she would be subjected to torture in the future if removed to Mauritania.

The petition for review is dismissed insofar as it relates to the asylum claim and denied insofar as it relates to the withholding and Torture Convention claims.