NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 11a0175n.06

No. 09-4146

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

**FILED**
**Mar 23, 2011**
LEONARD GREEN, Clerk

JUAN IXCOY IXCOY,

     Petitioner,

v.

ERIC H. HOLDER, JR.,
**Attorney General of the United States,**

     Respondent.

_____/

ON PETITION FOR REVIEW FROM
THE BOARD OF IMMIGRATION
APPEALS

BEFORE:    MERRITT, CLAY, and GRIFFIN, Circuit Judges.

    **CLAY, Circuit Judge.** Petitioner Juan Ixcoy Ixcoy seeks review of the August 24, 2009 decision of the Board of Immigration Appeals ("BIA"), which dismissed his appeal of the denial of his applications for asylum and withholding of removal under the Immigration and Nationality Act, 8 U.S.C. § 1101 *et seq.*, and protection under the Convention Against Torture and Other Cruel, Inhuman, or Degrading Treatment or Punishment, Dec. 10, 1984, 1465 U.N.T.S. 85, 23 I.L.M. 1027 ("Convention Against Torture"). For the reasons set forth below, the petition for review is **DISMISSED in part** and **DENIED in part.**

**BACKGROUND**

Petitioner is a native and citizen of Guatemala who entered the United States without inspection in 1995. Nearly a decade later, on March 29, 2005, Petitioner filed an asylum application based on his claimed membership in a particular social group. This application was referred to the immigration court, and on September 6, 2005, immigration proceedings commenced against Petitioner.

During these proceedings, Petitioner conceded removability, but renewed his application for asylum and sought withholding of removal and protection under the Convention Against Torture, arguing past and future persecution as a "Mayan Indian" based on race, nationality, membership in a particular social group, and political opinion. Petitioner argued that the Guatemalan government persecutes Mayan Indians as leftists, while the guerillas persecute Mayan Indians as pro-government. Petitioner further asserted that he feared returning to Guatemala because he had previously rejected an invitation "to be part of a guerilla group or of a gang."

On November 13, 2007, during the pendency of these proceedings, Petitioner filed a new asylum application, in which he stated that men who he "believed to be guerillas" killed his father in 1987 when Petitioner was seven years old. After the killing, Petitioner's mother placed him and his siblings on a bus that transported them to a new city, where they lived for seven years. When Petitioner returned home in 1995, "another group of armed men attacked our village, wanting to kill us." These men "[m]aybe wanted our land or our home and wanted to finish us all off."

In support of his request to remain in the United States, Petitioner submitted two letters from individuals in Ohio as well as a letter from Sister Honora Felix, a nun who had lived in Guatemala,

which stated that "violent repression of the residents" of Petitioner's native state had occurred, and most of the victims were "Mayan Indian." At a hearing before the immigration judge ("IJ"), counsel for Petitioner admitted that the nun "had never spoke to Mr. Ixcoy at all."

During the removal hearing before the IJ, Petitioner testified that his father was "killed by the guerrillas," although Petitioner admitted that he "do[es]n't know why they came and killed [his] father." Petitioner was asleep during the murder and did not see the perpetrators. When asked whether his father was a member of the civil guard, Petitioner responded, "I say no, but I don't know exactly, because I was still very young in that time." Even if his father was a member of the civil guard, Petitioner testified that he did not know whether this would have been a reason for the guerillas to kill him.

After the murder of his father, Petitioner's mother sent Petitioner and his siblings on a bus "and said just go." The children ended up in the city of Huehuetenango, where they lived with a woman named Margarita. Petitioner recalls hearing during that time that "people were killed," but remarked, "fortunately nothing happened to us."

After seven years in Huehuetenango, Petitioner and his siblings returned home. Petitioner recalled that the "same day we arrived [home,] a group of men came over and I don't know if they just want to harm us or they want to take our house away from us or I don't know." When asked for the identity of this group—"Were they army?"; "Were they guerilla?"; "Who were these people?"—Petitioner responded, "I don't know . . . . These people, I don't know if they have power to do anything . . . ." Petitioner testified that he did not see these men talk to his mother, nor did the

men "do anything to us," but Petitioner "saw they were there so we didn't even talk to them. We had to leave . . . . We run because of our lives. We didn't want to be killed."

Petitioner further testified that he is "afraid to go back because there's still groups in the area that may harm." When asked about his knowledge about the current situation in Guatemala, Petitioner testified that he "talked to [his] mother about two months ago," noting that he does not talk to her very often because she does not have a telephone. His mother reported to him that "there's a lot of death that is happening here." When asked about these deaths, Petitioner stated: "There's these people—I don't know if that they have powers to take over the places do they have powers to take our their people's properties, houses. I don't know exactly what's going on."

He further testified that his mother warned him that people, including neighbors, were being killed, and as a result, he is "afraid to go back." This is because Petitioner believes he "can be tortured or . . . harmed. I don't know. I just don't want to go back to Guatemala. Things can happen to me." Petitioner further explained that he fears that he will be harmed because "its not so sure in Guatemala now. There's a lot of insecurities and I'm afraid that anything can happen to me since my village – in my village there's no police or anything like that." For this reason, Petitioner agreed that he "could not" take his children back to Guatemala.

The IJ found that Petitioner "fail[ed] to establish that he has suffered past persecution on account of any protected ground." Although acknowledging that the killing of Petitioner's father was "completely reprehensible," the IJ reasoned that it "does not appear directed at [Petitioner] and/or the members of [his] family other than his father." The IJ noted that Petitioner did not know the reason for his father's killing. With regard to the evidence that Petitioner fled perceived threats

in his home village in 1995, the IJ dismissed Petitioner's fear of harm as only "subjective." Petitioner "did not know who the men he feared were or why they were after him [and] the men never spoke to him or threatened him directly."

With regard to the probability of future persecution, the IJ found that the record, including the Affidavit of Sister Felix, "shows persisten[t,] ingrained discrimination and bias against indigenous peoples, including Mayans, in Guatemala." But the IJ found that this evidence "falls short" of the requisite probability of persecution, noting that Petitioner's fear of "general gang violence" is an insufficient basis upon which to grant relief.

The BIA affirmed. With regard to past persecution, the BIA found that even if guerillas killed his father, Petitioner "cannot rely solely on the persecution of family members to qualify for withholding of removal." (BIA at 2 (citing *Akhtar v. Gonzales*, 406 F.3d 399, 406 (6th Cir. 2005).) The BIA further reasoned that Petitioner failed to show that the guerillas harmed his father "to inflict harm on [Petitioner], nor does the evidence reflect that [Petitioner] himself was actually attacked or even verbally threatened before he left Guatemala. (*Id.* (citing *Ali v. Ashcroft*, 366 F.3d 407, 410 (6th Cir. 2004), for the proposition that "persecution is an extreme concept").)

With regard to future persecution, the BIA found that Petitioner feared "generalized crime and violence in Guatemala, rather than . . . persecution on account of a protected ground." The BIA further reasoned that Petitioner "has not presented evidence of any specific threats made against him" on any protected ground since leaving Guatemala.

## DISCUSSION

Petitioner advances numerous arguments in his petition for review: first, that the BIA erred in denying his application for asylum as untimely; second, that procedural defects in the proceedings below require remand; and third, that he is entitled to withholding of removal under the Immigration and Nationality Act and/or protection under the Convention Against Torture. After setting forth the standard of review, we consider each argument in turn.

## I. Standard of Review

Where, as here, the BIA affirms the decision of the IJ, but adds additional comments, we review the decisions of both adjudicative bodies. *See Gilaj v. Gonzales*, 408 F.3d 275, 283 (6th Cir. 2005). The Court reviews questions of law *de novo*, with substantial deference given to the BIA's interpretation of the Immigration and Nationality Act, which "will be upheld unless the interpretation is arbitrary, capricious, or manifestly contrary to the statute." *Morgan v. Keisler*, 507 F.3d 1053, 1057 (6th Cir. 2007). The Court reviews agency findings of fact under the substantial evidence standard, which requires that factual findings be supported by "reasonable, substantial, and probative evidence on the record considered as a whole." *Ramaj v. Gonzales*, 466 F.3d 520, 527 (6th Cir. 2006).

## II. Denial of Petitioner's Application for Asylum

We begin with Petitioner's argument that the BIA erred in denying his application for asylum as untimely. An alien seeking asylum must file such an application "within 1 year after the date of the alien's arrival in the United States." 8 U.S.C. § 1158(a)(2)(B). Failure to do so may only be

excused if the alien demonstrates either "changed circumstances" affecting eligibility or "extraordinary circumstances relating to the delay in filing an application." *Id.* § 1158(a)(2)(D).

Here, it is undisputed that Petitioner failed to file his asylum application within one year of his arrival in the United States. Petitioner arrived in the United States in 1995, at the age of 15, but did not file an application for asylum until 2005, at the age of 25. Although Petitioner provided reasons for his delay—age, education, and language—both the IJ and the BIA nonetheless found that Petitioner failed to show "extraordinary circumstances" to excuse his delay given the approximately 10 years that elapsed between Petitioner's arrival and his application.

On appeal, Petitioner "conten[ds] that the facts of his childhood and entry into the USA at a young age fall within the orbit of [] extraordinary circumstances." The BIA rejected this argument, and we lack jurisdiction to revisit that decision. Although this Court may review constitutional challenges to the procedures below, the Court "does not have jurisdiction to review claims . . . that raise discretionary or factual questions." *El-Moussa v. Holder*, 569 F.3d 250, 255 (6th Cir. 2009). Because Petitioner challenges only the factual predicate to the timeliness determination below, this Court is without power to review. *See, e.g.*, 8 U.S.C. § 1158(a)(2)(D); *Thaim v. Dep't of Homeland Sec.*, No. 09-3188, 2010 WL 4244136, at *3 (6th Cir. Oct. 19, 2010); *Abudaya v. Holder*, 393 F. App'x 275 (6th Cir. 2010); *El-Moussa*, 569 F.3d at 255.

Accordingly, this portion of the petition for review is **DISMISSED** for lack of jurisdiction.

## III. Claimed Procedural Errors Below

Petitioner raises two assignments of error relating to the procedures below. First, Petitioner objects to a pre-hearing colloquy between counsel and the IJ, in which the IJ sought to identify and

clarify the issues. Although Petitioner did not object below, he now argues that the "discussion was inappropriate because the testimony regarding [Petitioner's] claims should have been elicited directly from [Petitioner] rather than through counsel." Second, Petitioner objects to the IJ's decision to allow into evidence a letter by Sister Felix but not require her testimony. Because Petitioner believes the IJ placed insufficient evidentiary weight on the letter, Petitioner in retrospect would have sought the live testimony of Sister Felix, which Petitioner believes would have "proven" his "well-founded fear of persecution were he to be returned to Guatemala."

Because Petitioner makes these arguments in a "perfunctory manner, unaccompanied by some effort at developed argumentation," we deem them to be waived. *See United States v. Sandridge*, 385 F.3d 1032, 1035-36 (6th Cir. 2004). The most basic deficiency in Petitioner's argument is its failure to identify the legal basis for his assignments of error. In fact, the relevant section of Petitioner's brief is devoid of any legal authority at all, and gives only cursory treatment to the issues.[1] *See Moore v. LaFayette Life Ins. Co.*, 458 F.3d 416, 448 (6th Cir. 2006) (noting that appellate courts are not "self-directed boards of legal inquiry and research, but essentially arbiters of legal questions presented and argued by the parties.") (internal citations omitted); *see also*

---

[1]Even if we were to consider the merits of these claimed errors, and to the extent we construe Petitioner as raising procedural due process arguments, we would deny each as without merit. First, nothing in the record suggests that the colloquy between the IJ and counsel rendered the proceedings fundamentally unfair, particularly where Petitioner did not contemporaneously object; Petitioner underwent thorough direct, cross, and redirect examinations; and Petitioner failed to identify any prejudice resulting from this claimed error. Second, nothing in the record suggests that the absence of Sister Felix's testimony violated due process. The IJ gave weight to her letter and Petitioner's counsel admitted that Sister Felix had no personal knowledge of Petitioner's circumstances nor had she ever met Petitioner.

*Soumare v. Holder*, 343 F. App'x 75, 83 (6th Cir. 2009) (finding waiver where a due process argument was raised "without any citation or development of argument").

Accordingly, this portion of the petition for review is **DENIED**.

**IV.    Denial of Withholding of Removal Under the Immigration and Nationality Act and/or Protection Under the Convention Against Torture**

We next turn to Petitioner's claim that the BIA erred in denying his request for withholding of removal under the Immigration and Nationality Act and/or protection under the Convention Against Torture.

**A.    Denial of Withholding of Removal Under the Immigration and Nationality Act**

An alien may request withholding of removal under 8 U.S.C. § 1231(b)(3), which prevents the removal of an alien to a country in which "the alien's life or freedom would be threatened . . . because of the alien's race, religion, nationality, membership in a particular social group, or political opinion." 8 U.S.C. § 1231(b)(3)(A). To obtain withholding of removal, the alien must demonstrate a clear probability that he would face persecution in the country of removal on account of a protected grounds. *See Mikhailevitch v. I.N.S.*, 146 F.3d 384, 391 (6th Cir. 1998). Future persecution may be presumed if the alien establishes past persecution. *See* 8 C.F.R. § 208.16(b)(1)(i).

Here, the immigration courts below found that Petitioner failed to show past persecution or a probability of future persecution. On appeal, Petitioner argues that these findings were not supported by substantial evidence. We disagree.

We begin with past persecution. Petitioner argues that he established past persecution by the following record evidence that he cites in his brief: 1) the "violent death of his father when [Petitioner] was only age 7 at the hands of the (it is believed) – guerillas"; 2) Petitioner's "knowledge

of the atrocities and witnessing first hand, the behavior of the army and guerillas towards members of his social group, the Mayan Indians and indigenous people of Guatemala – and all this at a very tender age having been born in 1980, when fighting and brutality was moving toward its peak"; and 3) "the constant running, hiding, and living in fear, ingrained into [Petitioner] as a child."

Although Petitioner presented evidence of the above-referenced facts, the finding below that Petitioner failed to establish past persecution is nonetheless supported by substantial evidence. Petitioner does not know who killed his father or for what reason his father was killed. Nowhere does Petitioner allege any concrete instances of persecution that he experienced while in Guatemala, either at home or in the city to which he fled. Because the circumstances of the death of Petitioner's father are unclear, Petitioner's flight to another city after his father's death is of limited probative value. Under these circumstances, the record does not compel a finding of past persecution. *See, e.g.*, *Mendez-Coronado v. Holder*, 374 F. App'x 601, 604 (6th Cir. 2010).

Having failed to establish persecution, Petitioner may obtain relief only by demonstrating a probability of future persecution. *See Mikhailevitch*, 146 F.3d at 391. The IJ and BIA found that Petitioner failed to do so, and the record does not compel a finding to the contrary.

The IJ agreed with Petitioner that pervasive discrimination against Mayan Indians exists in Guatemala. But, as the IJ noted, this discrimination must rise to the level of persecution to entitle Petitioner to relief. *See Morente v. Holder*, No. 09-3830, 2010 WL 4386811, at *4 (6th Cir. Oct. 26, 2010). The only evidence of ongoing persecution Petitioner sets forth in his brief is citation to Petitioner's equivocal testimony about general violence in Guatemala, as well as a general citation to hundreds of pages of exhibits for which Petitioner provides no analysis. Although Petitioner

believes that he would be "viewed as a traitor on his return" because he did not join the "guerilla forces of criminal gangs," this argument is speculative and, as the BIA noted, Petitioner "has not presented evidence of any specific threats made against him" on any protected ground since fleeing.

In light of Petitioner's testimony and the documentary evidence in the record, substantial evidence supports the BIA's finding that Petitioner feared "generalized crime and violence in Guatemala, rather than a fear of persecution on account of a protected ground." Petitioner himself admits that he is "afraid to go back because of crime and gangs."

Accordingly, Petitioner is not entitled to withholding of removal under 8 U.S.C. § 1231(b), and his petition for review on this ground is **DENIED**.

### B.      Denial of Protection Under the Convention Against Torture

Petitioner argues that he is entitled to protection under the Convention Against Torture. An applicant seeking relief under the Convention Against Torture has the burden to show that it is more likely than not that he will be tortured if removed to the proposed country. *See* 8 C.F.R. § 208.16(c)(2). An applicant need not show torture on any protected grounds; rather,

> [t]orture is defined as any act by which severe pain or suffering, whether physical or mental, is intentionally inflicted on a person for such purposes as obtaining from him or her or a third person information or a confession, punishing him or her for an act he or she or a third person has committed or is suspected of having committed, or intimidating or coercing him or her or a third person, or for any reason based on discrimination of any kind, when such pain or suffering is inflicted by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity.

*Id.* § 1208.18(a)(2). In deciding whether an applicant is more than likely to be tortured upon his return, this Court considers "the possibility of future torture, including any evidence of past torture

11

inflicted upon the applicant and evidence that the applicant is not likely to be tortured in another area of the country of removal." *Ali v. Reno*, 237 F.3d 591, 596-97 (6th Cir. 2001); *see also* 8 C.F.R. § 208.16(c)(3).

Here, the factual record does not compel a finding contrary to that reached below. Both the IJ and the BIA acknowledged that "torture does occur in Guatemala," but found that Petitioner "has not shown that it is probable that it will occur with the acquiescence of the Guatemalan government in his case." This finding was supported by substantial evidence.

As the government argues, Petitioner is "vague about who would torture him. Indeed, Petitioner's brief on appeal identifies these individuals broadly as "either prior guerilla operatives, ex-government soldiers, or [] third parties such as criminal gangs." Although the record is replete with evidence that Guatemala is a dangerous country, and that its government may often be ineffective, nothing referenced in Petitioner's brief on appeal compels a finding that these groups, with the acquiescence of the government, will torture Petitioner upon his return. *See Dominguez-Gonzales v. Holder*, 381 F. App'x 511, 517 (6th Cir. 2010) (holding that the Guatemalan government's inability to protect an alien from crime is insufficient to support a claim for relief, where the alien did not present evidence—apart from his own testimony—that the government was "complicit").

Accordingly, Petitioner is not entitled to protection under the Convention Against Torture, and his petition for review on this ground is **DENIED**.

**CONCLUSION**

For the reasons set forth above, the petition for review is **DISMISSED** insofar as it

challenges the timeliness ruling below and **DENIED** as to all other claims.