NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 11a0741n.06

No. 09-4296

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

ANTONIO SICA IXCOY, JULIA IXCOY MEJIA, )
and RIGOBERTA SICA, )
                                       )
       Petitioners, )
                                       )
           v. )
                                       )
ERIC H. HOLDER, JR., United States Attorney )
General, )
                                       )
       Respondent. )

FILED

*Nov 01, 2011*

LEONARD GREEN, Clerk

ON PETITION FOR REVIEW OF A FINAL ORDER OF THE BOARD OF IMMIGRATION APPEALS

BEFORE: BOGGS and SILER, Circuit Judges, and VAN TATENHOVE, District Judge.*

    **VAN TATENHOVE, District Judge**. Petitioners seek asylum and withholding of removal under the Immigration and Nationality Act ("INA") and the Convention Against Torture ("CAT"). They argue that extraordinary circumstances excuse the untimely filing of their application for asylum, and they further contend that they will be subject to persecution and torture if returned to Guatemala. The immigration judge ("IJ") rejected the petitioners' claims, and the Board of Immigration Appeals ("BIA") adopted the IJ's opinion, supplementing that opinion with its own comments. For the reasons stated below, we **DENY REVIEW**.

I.

    Petitioners Antonio Sica Ixcoy, Julia Ixcoy Mejia, and Rigoberta Sica are natives and citizens of Guatemala. Antonio and Julia are husband and wife, and Rigoberta is their daughter.

---

    *The Honorable Gregory F. Van Tatenhove, United States District Judge for the Eastern District of Kentucky, sitting by designation.

The three entered the United States illegally in December of 1999. Antonio and Julia also have three children who were born in the United States, as well as one child who continues to live in Guatemala with Julia's family.

The petitioners originally filed their application for asylum in 2004. In April of 2005, however, the Department of Homeland Security initiated removal proceedings against the petitioners by filing Notices to Appear ("NTAs"), charging the three with being aliens present in the United States without having been admitted or paroled. At a Master Calendar hearing held in September of 2006, the petitioners, through counsel, admitted the allegations contained in the NTAs. Additionally, they asked for renewal of their claims for asylum, withholding of removal under the INA, and protection under the CAT, and, in the alternative, for voluntary departure. Then, in September of 2007, the petitioners filed a new application for asylum, claiming persecution on account of their race, nationality, political opinion, and membership in a particular social group. In support of their new application, the petitioners filed several documents about conditions in Guatemala.

IJ Iskra conducted a hearing on the merits of the petitioners' claims on November 24, 2008. Prior to the hearing, the IJ denied the petitioners' request to allow Sister Honora Felix to testify telephonically as a lay witness on country conditions in Guatemala. At the hearing, the IJ noted that he was in possession of a letter written by Sister Felix on the subject, and he made that letter a part of the record.

During the November hearing, the IJ heard testimony from Mr. Sica Ixcoy. He testified that when he was a young boy his family had to leave their home and live as refugees because his father

refused to join the guerrillas and fight against the Guatemalan government. He further testified that the guerrillas took his sister and niece to the mountains and threatened them, though they were later released. Later in his testimony, Mr. Sica Ixcoy acknowledged that the guerrillas are no longer active in Guatemala. He stated, however, that "[t]hey've become the gangs which do the war now." According to Mr. Sica Ixcoy, gangs in Guatemala are everywhere, and they harass everyone. He claims that he sends his father money to pay off the gangs who want the title to his property. He also claims that the police are corrupt and get money under the table if they do nothing. But he admits that no one in his family has been hurt by the gangs. Similarly, Mrs. Ixcoy Mejia testified that her family members in Guatemala have not joined the gangs, and have not been physically harmed.

After the hearing, the IJ issued his decision. He rejected the petitioners' claims for asylum on the ground that they had not shown extraordinary circumstances that would justify the failure to file their application within the one-year time limit. He also rejected Mr. Sica Ixcoy's claim for withholding of removal under the INA, explaining that Mr. Sica Ixcoy's experiences with the guerrillas did not amount to past persecution and that Mr. Sica Ixcoy could not fear future persecution because of the 1996 peace accords. The IJ further explained that Mr. Sica Ixcoy's testimony did not show that he was targeted or would be targeted in the future by gangs because he is a Mayan. Finally, IJ Iskra rejected the claim for protection under the CAT because there was no evidence suggesting that Mr. Sica Ixcoy would be subject to torture in Guatemala at the instigation of or with the acquiescence of public officials.

The BIA affirmed the IJ's decision on the issues of asylum and withholding of removal under the INA and the CAT. In response to the petitioners' argument that the IJ erred by failing to consider their claim for voluntary departure, the Board found that the petitioners waived this claim by failing to request voluntary departure during their November 2008 merits hearing. Further, in response to the petitioners' argument that the IJ erred by refusing to allow the testimony of Sister Felix, the BIA found that the petitioners failed to show what information, if any, her testimony would have provided that would have changed the outcome. Finally, the BIA rejected the petitioners' argument that the IJ erred in holding that only Antonio Sica Ixcoy applied for withholding of removal and protection under the CAT in his asylum application. The BIA explained that derivative beneficiaries who do not file their own independent applications for asylum, like Julia and Rigoberta, are not eligible for withholding of removal or protection under the CAT based upon a lead respondent's application. The petitioners now appeal to this court.

## II.

## A.

When the BIA adopts the IJ's reasoning and supplements the IJ's opinion, this court "'directly reviews the decision of the IJ while considering the additional comment made by the BIA.'" *Zhao v. Holder*, 569 F.3d 238, 246-47 (6th Cir. 2009) (quoting *Mapouya v. Gonzales*, 487 F.3d 396, 405 (6th Cir. 2007)). We review legal conclusions de novo, *id.* at 246, but defer to reasonable agency interpretations of the INA. *INS v. Aguirre-Aguirre*, 526 U.S. 415, 424 (1999); *Patel v. Gonzalez*, 432 F.3d 685, 692 (6th Cir. 2005). Factual findings are reviewed for substantial evidence. *Zhao*, 569 F.3d at 246. Under the deferential substantial-evidence standard, the agency's

findings of fact are conclusive unless any reasonable adjudicator would be compelled to conclude to the contrary. *Id.* at 247; *see* 8 U.S.C. § 1252(b)(4)(B). Additionally, the agency's determination must be upheld if it is supported by "reasonable, substantial, and probative evidence on the record considered as a whole." *Zhao*, 569 F.3d at 247. We may not reverse the agency's determination simply because we would have decided the matter differently. *Id.*

**B.**

**1.**

In general, an alien must file an asylum application within one year of his or her arrival in the United States. 8 U.S.C. § 1158(a)(2)(B). There is an exception to this filing deadline, however, where the alien can demonstrate "extraordinary circumstances relating to the delay in filing an application within" the one-year period. 8 U.S.C. § 1158(a)(2)(D). Petitioners argue that the IJ erred in failing to recognize that Mr. Sica Ixcoy's lack of knowledge of the English language, his mistrust of authorities based on his experiences in his homeland, and his lack of knowledge of the laws of the United States regarding asylum constitute exceptional circumstances excusing the nearly five-year delay between his entry into the United States and the filing of his application for asylum.

This court lacks jurisdiction to review the decision of the IJ, affirmed by the BIA, that Petitioners' asylum application was untimely and that extraordinary circumstances did not excuse the untimely filing. *See* 8 U.S.C. § 1158(a)(3). We have held that we "will review asylum applications denied for untimeliness only when the appeal seeks review of 'constitutional claims or matters of statutory construction,' not when the question is 'discretionary' or 'factual.'" *Shkulaku-Purballori v. Mukasey*, 514 F.3d 499, 502 (6th Cir. 2007) (quoting *Almuhtaseb v. Gonzales*, 453

F.3d 743, 748 (6th Cir. 2006)); *see* 8 U.S.C. § 1252(a)(2)(D).  In *Shkulaku-Purballori*, we noted that

"the timeliness of an alien's asylum application is usually a question of fact."  514 F.3d at 502.

After considering Shkulaku's argument that his late filing was the fault of scheduling at the

immigration court in Detroit, as well as his claim that he thought an asylum application had to be

filed in front of a judge, we found these issues to be "predominantly factual" and therefore not

subject to review.  *Id.*; *see also Soe v. Gonzales*, 227 F. App'x 468, 470 (6th Cir. 2007).

Similarly, in this case, the IJ and the BIA made a factual determination that Mr. Sica Ixcoy's

lack of knowledge of the English language, mistrust of authorities, and lack of knowledge of U.S.

law did not excuse his failure to file his asylum application before the one-year deadline.

Accordingly, we do not have jurisdiction to review that determination.

**2.**

Petitioners next argue that the BIA erred in holding that Julia Ixcoy Mejia and Rigoberta Sica

were not eligible for withholding of removal or protection under the CAT because neither filed her

own application for these forms of protection.  Rather, Julia and Rigoberta made their requests for

relief on the basis of Antonio Sica Ixcoy's application.

Under 8 U.S.C. § 1158(b)(3)(A), an asylum applicant's spouse or child may be granted

derivative status.  In other words, had Antonio Sica Ixcoy been granted asylum, Julia and Rigoberta

could have been granted asylum on the basis of Antonio's application alone.   Unlike §

1158(b)(3)(A), however, the statutes and regulations governing withholding of removal and

protection under the CAT do not explicitly state that those forms of relief may apply to an

applicant's family members. *See* 8 U.S.C. § 1231(b)(3); 8 C.F.R. § 1208.16(c)(2), (4).  In discussing

the differences between asylum and withholding of removal in *Castellano-Chacon v. INS*, we explained that "a grant of an alien's application for withholding is not a basis for adjustment to legal permanent resident status, *family members are not granted derivative status*, and it only prohibits removal of the petitioner to the country of risk, but does not prohibit removal to a non-risk country." 341 F.3d 533, 545 (6th Cir. 2003) (emphasis added). Other circuits also hold that withholding of removal and protection under the CAT do not extend to an applicant's spouse and/or minor children. *See Arif v. Mukasey*, 509 F.3d 677, 682 (5th Cir. 2007); *Mohamed v. Ashcroft*, 396 F.3d 999, 1002 (8th Cir. 2005); *Ali v. Ashcroft*, 394 F.3d 780, 782 n. 1 (9th Cir. 2005). In *Arif*, the Fifth Circuit reasoned as follows:

> The statute providing for asylum expressly includes a provision for derivative beneficiaries, but the statute providing for withholding of removal makes no mention of derivative relief. In the absence of language regarding derivative beneficiaries similar to that found in the asylum statute, we cannot infer that Congress intended withholding of removal to apply to the spouse and minor children of an applicant who do not independently qualify for relief. Indeed, precisely the opposite inference must be made from the presence of such language in one statute and the absence thereof in the other statute.

509 F.3d at 682 (internal citation omitted). Thus, the BIA did not err in holding that Julia and Rigoberta were ineligible for withholding of removal and protection under the CAT on the basis of Antonio's application.

Moreover, even if it was error to find that Julia and Rigoberta were required to file their own applications, it was a harmless one. Julia and Rigoberta have no claims for withholding of removal and protection under the CAT that would be separate from, and independent of, Antonio's claims. As discussed below, substantial evidence supports the decision that Antonio does not qualify for these forms of relief.

7

**3.**

To establish a claim for withholding of removal, "an applicant must demonstrate a clear probability that his life or freedom would be threatened in the country directed for removal on account of his race, religion, nationality, membership in a particular social group, or political opinion." *Zhao*, 569 F.3d at 245 (citing *INS v. Stevic*, 467 U.S. 407 (1984)); *see* 8 C.F.R. 1208.16(b). Stated otherwise, an applicant must show a "clear probability of persecution." *Ceraj v. Mukasey*, 511 F.3d 583, 594 (6th Cir. 2007) (quoting Ali v. Ashcroft, 366 F.3d 407, 411 (6th Cir. 2004)). Under the regulations, "[t]he testimony of the applicant, if credible, may be sufficient to sustain the burden of proof without corroboration." 8 C.F.R. § 1208.16(b).

In evaluating a claim for withholding of removal, the IJ must consider whether the applicant suffered past persecution in the proposed country of removal. 8 C.F.R. § 1208.16(b)(1)(i). If the applicant establishes past persecution on one of the five grounds enumerated above, then future persecution is presumed. *Id.* The agency can rebut this presumption, however, by demonstrating by a preponderance of the evidence that there has been a fundamental change in circumstances or that the applicant could avoid a future threat to his life or freedom by relocating to another part of the proposed country of removal. 8 C.F.R. § 1208.16(b)(1)(i)-(ii). If the applicant cannot establish past persecution, then he bears the burden of establishing that it is more likely than not that he would suffer a future threat to his life or freedom if returned to the proposed country of removal. 8 C.F.R. § 1208.16(b)(2).

The IJ found, and the BIA agreed, that Mr. Sica Ixcoy failed to establish past persecution based on his experiences with Guatemalan guerrillas in the 1970s and 1980s. Substantial evidence

supports this decision. In *INS v. Elias-Zacarias*, 502 U.S. 478, 482 (1992), the Supreme Court found

that Elias-Zacarias, a Guatemalan, could not show that guerrillas persecuted him for his political

opinion where he refused to join their ranks out of fear that the government would retaliate against

him and his family. Stated otherwise, he could not show that his motive for resisting the guerrillas

was politically based. *Id.* In the instant case, most of Mr. Sica Ixcoy's testimony regarding

guerrillas related to their efforts to recruit his *father* into their ranks, and, like Elias-Zacarias, Sica

Ixcoy failed to articulate a political motive for his family's resistance to the guerrillas. Further, Sica

Ixcoy did not demonstrate that the guerrillas harassed or persecuted his family on the basis of their

race, religion, nationality, or membership in a particular social group.

Additionally, substantial evidence supports the decision of the IJ and the BIA that Mr. Sica

Ixcoy failed to establish a likelihood of future persecution by the guerrillas. As we noted in *Pascual*

*v. Mukasey*, 514 F.3d 483, 488 (6th Cir. 2007), the civil war in Guatemala ended in 1996, and "as

the war subsided, so did any objectively reasonable fear of persecution" at the hands of guerrillas.

Even Sica Ixcoy himself conceded that the guerrillas are no longer active.

Finally, substantial evidence supports the IJ's and the BIA's determination that Mr. Sica

Ixcoy failed to establish a likelihood of future persecution by gangs on account of one of the five

enumerated grounds. Although the petitioners' brief states that gangs in Guatemala would target

the petitioners because they are Mayans, during their testimony before the IJ, neither Mr. Sica Ixcoy

nor his wife testified that they fear gangs will persecute them on account of their identity as Mayans.

Instead, they testified about a level of general violence and harassment by gangs shared by all

citizens of Guatemala. Such general violence is insufficient to state a claim for withholding of

removal. *See Mendez-Coronado v. Holder*, 374 F. App'x 601, 605 (6th Cir. 2010). Additionally, the fact that no one in Mr. Sica Ixcoy's family or his wife's family living in Guatemala has been harmed by the gangs further undermines his claim. *See Pascual* 514 F.3d at 489; *Moran-Quinteros v. Holder*, 352 F. App'x 974, 979 (6th Cir. 2009).

**4.**

To warrant withholding of removal under the CAT, an applicant must "establish that it is more likely than not that he or she would be tortured if removed to the proposed country of removal." 8 C.F.R. § 1208.16(c)(2); *see Ceraj*, 511 F.3d at 594. The regulations define torture as

> any act by which severe pain and suffering, whether physical or mental, is intentionally inflicted on a person for such purposes as obtaining from him or her or a third person information or a confession, punishing him or her for an act he or she or a third person has committed or is suspected of having committed, or intimidating or coercing him or her or a third person, or for any reason based on discrimination of any kind, when such pain or suffering is inflicted by or at the instigation of or with the consent or acquiescence of a public official or other person acting in an official capacity.

8 C.F.R. § 208.18(a)(1). In considering whether an applicant qualifies for relief under the CAT, "all evidence relevant to the possibility of future torture shall be considered." 8 C.F.R. § 1208.16(c)(3). This includes evidence of past torture inflicted upon the applicant. 8 C.F.R. § 1208.16(c)(3)(i).

Here, the IJ found that Mr. Sica Ixcoy presented no evidence that anyone in Guatemala would seek him or his family out in order to torture them. The BIA agreed, further noting that the record does not support Mr. Sica Ixcoy's "assertion that the Guatemalan government 'acquiesces' in treatment rising to the level of torture by street gangs because it is 'corrupt.'" *See Amir v. Gonzales*, 467 F.3d 921 (6th Cir. 2006) (as cited by Mr. Sica Ixcoy). Substantial evidence supports

this decision. As noted previously, Mr. Sica Ixcoy and his wife both testified that their family members living in Guatemala have not been physically harmed by the gangs. Thus, there is no reason to believe that Mr. Sica Ixcoy would suffer physical torture if removed to Guatemala. Further, although there was testimony that the gangs have attempted to recruit family members and have harassed and extorted money from Mr. Sica Ixcoy's father, this does not appear to rise to the level of mental "torture" contemplated by the regulations. Thus, there is no evidence that Mr. Sica Ixcoy would experience mental torture in his home country.

**5.**

The IJ denied the petitioners' request to permit Sister Honora Felix to testify as a lay witness on country conditions in Guatemala. He did so by order entered January 22, 2008, more than a week after he received a letter from Sister Felix. At the hearing, the IJ noted that he was in possession of the letter, and he made it a part of the record. In her letter, Sister Felix explains that she has served in Guatemala for twenty-six years, and she states that she "can testify to the violence and conflict that has characterized that society and continues to do so." Sister Felix refers to Guatemala as "virtually a failed state," and she claims that based on the area where Mr. Sica Ixcoy is from, his claims of danger are "plausible."

The BIA affirmed the IJ's decision not to allow Sister Felix to testify at the hearing. The Board stated that petitioners failed to indicate what, if any, information Sister Felix would have provided that would have changed the outcome of the application. Petitioners disagree. They argue that Sister Felix would have been able to testify in greater detail about the prevalence of gangs in Guatemala, the composition of the gangs, and police involvement in the gangs.

In *Singh v. Ashcroft*, 398 F.3d 396, 406 (6th Cir. 2005) (citation and internal quotation marks omitted), we noted that "[i]n immigration proceedings, an applicant is entitled to a reasonable opportunity to examine the evidence against him, to present evidence on his own behalf, and to cross-examine witnesses presented by the Government." Further, we explained that evidentiary matters in immigration proceedings "are not subject to the Federal Rules of Evidence, and we review evidentiary rulings by IJs only to determine whether such rulings have resulted in a violation of due process." *Id.* at 406-07 (citations omitted). Here, the petitioners' due process rights were not violated. Petitioners contend that Sister Felix's letter indicates the path her testimony would have taken. Nothing about her letter suggests, however, that Sister Felix would have been able to establish that Mr. Sica Ixcoy would face persecution by gangs on account of his identity as a Mayan, or that she would have provided evidence demonstrating that it is more likely than not that Mr. Sica Ixcoy would suffer harm amounting to torture if removed to Guatemala. Accordingly, it was not error for the IJ to deny the petitioners' request to allow Sister Felix to testify at their merits hearing.

**6.**

Petitioners argue that the IJ erred in failing to afford them an opportunity for voluntary departure. *See* 8 U.S.C. § 1229c(b)(1)(A)-(D). In its review, the BIA noted that the petitioners did not seek voluntary departure during their merits hearing. Therefore, the BIA found no reason to remand the record to the IJ for the purpose of determining the petitioners' eligibility for voluntary departure. In other words, the BIA found that the petitioners waived the issue.

In *Xhuti v. Mukasey*, 281 F. App'x 536, 540 (6th Cir. 2008), we noted that "[i]n prior administrative decisions, the Board has developed and applied a rule that issues not objected to

below are waived on appeal." We further noted that "[s]everal courts have recognized the validity of the Board's waiver rule." *Id.* (citing cas13es). Although the petitioners raised the issue of voluntary departure during preliminary hearings, they did not request it as an alternative form of relief at the merits hearing. On this record, the BIA did not abuse its discretion in finding that the petitioners waived their claim for voluntary departure. *See Xhuti*, 281 F. App'x at 540.

## III.

For the reasons stated above, we **DENY REVIEW**.